## LOONEY v. LEEPER, Secy. of State, et al.

No. 21651. Opinion Filed Oct. 14, 1930.

J. B. A. Robertson and B. H. Carey, for petitioner.

J. Berry King, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., for respondents.

RILEY, J. Petitioner, by leave of court, commenced this action in mandamus on September 2, 1930, to require respondents in their respective official capacities to submit a proposed amendment to the State Constitution to the people for their adoption or rejection at the next general election to be held in this state on November 4, 1930.

Senate Joint Resolution No. 5 (ch. 250, S. L. 1923) was passed by the Legislature on March 27. 1923, and approved by the Governor March 31, 1923, and filed with the Secretary of State under caption of State Question No. 122, Referendum Petition No. 42. It reads as follows:

"Chapter 250
"Senate Joint Resolution No. 5.
"State Officers.

"A resolution authorizing a submission of a proposed amendment to the Constitution to the people for their approval or rejection, said proposed amendment being an amendment to section 3, article 6, of the Constitution of the state of Oklahoma.

"Be it Enacted by the People of the State of Oklahoma:

"Amendment."

"Section 1. That the following proposed amendment to section 3, article 6, of the Constitution of the state of Oklahoma, shall be referred to the people for their ratification or rejection at an election, as provided by law. Said proposed amendment shall be submitted under articles 5 and 24, of the Constitution of the state of Oklahoma. Said proposed amendment being an amendment to and in lieu of section 3, article 6, of the Constitution of the state of Oklahoma, as follows to wit:

"'Section 3. No person shall be eligible to the office of Governor, Lieutenant Governor, Secretary of State, State Auditor, Attorney General, State Treasurer, Superintendent of Public Instruction, State Examiner and Inspector, except a citizen of the United States of the age of not less than thirty years, and who shall have been three years next preceding such election, a qualified elector of this state.'

"Said proposed amendment shall be submitted as provided by law in the following form:

"'Shall the proposed amendment be adopted?'

"'( ) Yes.

"'( ) No.

"Said proposed amendment of the Constitution of the state of Oklahoma shall, upon receiving a majority of all electors voting at said election, voting in favor of said amendment, be adopted.

"Submission—When.

"Section 2. The amendment herein proposed shall be submitted to the qualified electors of this state as provided by law at the next ensuing state wide primary elec-

tion, or in a general state wide election which may be called prior thereto.

"Adopted by the Senate March 27, 1923.

"Adopted by the House of Representatives March 27, 1923.

"Approved March 31, 1923."

By inadvertence or by mistake of law the proposed amendment to the Constitution was submitted at a special election held on October 2, 1923, but subsequently declared lost by the Governor for the reason that the same had not been properly submitted to the people, notwithstanding the question received 173,262 votes for adoption as against 86,445 votes for rejection. No submission has been made since then.

The response filed by the Attorney General herein admits all the allegations of the petition except the effectiveness of the resolution, supra, authorizing the respondents to now submit the question, but joins in the request that this court take original jurisdiction and determine the issues involved.

The only issue presented is whether Senate Joint Resolution No. 5 is now in full force and effect, and as to whether the duties of respondents are ministerial.

Section 2 of the resolution contains the following language:

"The amendment herein proposed shall be submitted to the qualified electors of this state as provided by law, at the next ensuing state wide primary election or in a general state wide election which may be called prior thereto."

The resolution makes no reference to the next general election to be held in this state, unless it can be said that "as provided by law" is a reference thereto, but the direction of the resolution was for the submission of the question at a primary election (the same being the primary election in August, 1924) or at a general election which may be called prior thereto, meaning August, 1924. The election last referred to could only have been a special election, as the laws of Oklahoma did not authorize a state-wide election to be held after March 31, 1923, and prior to the primary election of August, 1924.

The Senate Journal of the Ninth Legislature shows said resolution was originally adopted in the Senate by a vote of 40 to nothing, but no vote was taken on the question of submission at a special election. The House Journal shows that said resolution was immaterially amended and passed by a vote of 63 to 16 but no vote was taken on the question of submission at a special election. The Senate Journal shows concurrence by the Senate in the amendment to the resolution by a vote of 37 to nothing. So, irrespective of the question of the necessity of a separate vote by each branch of the Legislature on the question of submission at a special election, it is apparent that 63 affirmative votes in the House did not constitute a two-thirds majority of the members of the House even though it did constitute a majority of those members present and voting.

This court held in State ex rel. Short, Attorney General, v. State Board of Equalization et al., 107 Okla. 118, 230 Pac. 743, that the requirement of the Constitution for the submission of a proposed constitutional amendment was the adoption of a resolution proposing same by a two-thirds vote of each house, and that such two-thirds vote meant a "two-thirds vote of all the members elected to and constituting each house" and not merely two-thirds of those present and voting.

Section 1, article 24, Constitution:

"Any amendment or amendments to this Constitution may be proposed in either branch of the Legislature, and if the same shall be agreed to by a majority of all the members elected to each of the two houses, such proposed amendment or amendments shall, with the yeas and nays thereon, be entered in their journals and referred by the Secretary of State to the people for their approval or rejection, at the next regular general election, except when the Legislature, by a two-thirds vote of each house, shall order a special election for that purpose. If a majority of all the electors voting at such election shall vote in favor of any amendment thereto, it shall thereby become a part of this Constitution.

"If two or more amendments are proposed, they shall be submitted in such manner that electors may vote for or against them separately."

In the cited case it was also held:

"The embodiment in the provision of the Legislature proposing the amendment that it shall be submitted at the next general election, or at any special election, is purely surplusage, for the constitutional provision, supra, which rises superior to all attempted legislative enactment, expressly provides how such an amendment agreed to shall be submitted to the people, and that is, omitting the exception, where a majority of each house agrees to an amendment, it shall be referred at a general election (meaning next regular general election) by the Secretary of State."

It should be here noted that either legisislative measures or Constitutional amendments, proposed by initiative petitions, and referendums by the people on legislative measures proposed by the Legislature are voted upon under the provisions of section 3, article 5, of the Constitution, and hence, under the provisions of said section, some may be submitted "at the next election held throughout the state," which would include a statewide primary election, but constitutional amendments proposed by the Legislature may only be submitted at the "next regular general election," as provided by section 1, article 24, supra.

The proposed constitutional amendment should have been referred by the Secretary of State to the people for their approval or rejection at the general election held in November, 1924. That was not done. No doubt the failure to perform this duty was occasioned by the confusion brought about by the terms of the resolution itself. The question is now presented as to whether the failure of an officer to perform his duties at a proper time operates to defeat a right of voice on the part of the people.

38 C. J. 721, states the rule we follow:

"Where an officer or board is under a clear legal ministerial duty to give notice of and order an election, mandamus is an appropriate remedy to compel the performance of that duty, and this is held, although the time designated by law for such election is passed. * * *"

The case of State v. Davis (W. Va.) 85 S. E. 779, holds:

"Election officials cannot by plain disobedience of the minor mandate contained in the statute as to the time of election deprive the citizens of the greater mandate that they shall have an election. They cannot by disobedience of a mere particular embraced in the whole of the grant to the citizens of a legal right, exonerate themselves from disobedience of the whole."

And Texas so holds (Tex. Civ. App.) Yett v. Cook, 274 S. W. 196:

"Mandamus would lie to compel municipal officers, charged with the duty of calling and conducting an election on a certain day designated in city charter, at which their successors in office were to be named, to conduct an election where they had superseded judgment in mandamus proceedings, requiring them to call election on date prescribed by charter, and thereby prevented its execution on that date, though date fixed by law governing particular election had passed."

In Wright et al. v. Ward (Ark.) 280 S. W. 369, it was held:

"Circuit court held not prevented from granting mandamus to compel calling of referendum election because day of election, asked to be designated in referendum petition, had passed at time of filing mandamus petition."

Pennsylvania adheres to the same doctrine, Taylor v. King, 130 Atl. 407:

"If directed by Legislature, in compliance with constitutional requirement, it becomes duty of secretary of commonwealth to advertise proposed constitutional amendment, as directed by Const. art. 18, and if he improperly refuses because of misunderstanding as to his duty, mandamus lies to require it to be done, even if it is necessary, because of delay, to hold election at time later than that named by Legislature."

The case of State v. City of Buckhannon (W. Va.) 123 S. E. 182, says:

"The case of State ex rel. Heironimus v. Town of Davis, 75 W. Va. 587, 85 S. E. 779, holds that, where the proper authorities have failed to hold an election on the date named by law, they may be required by mandamus to hold the election on a later date. Statutes fixing the time for holding elections have been held to be directory, and not mandatory, to the extent of permitting and authorizing an election at a later date than that named in the statute where the authorities whose duty it is to call the election or prepare for and conduct it neglect to perform the duty, and the obligation still remains. * * * State v. Murray, 41 Minn. 123, 42 N. W. 858."

And so in West Virginia, State v. Pierson, 103 S. E. 671:

"An election required by law to be held at a particular time will be void if held at a time different from that appointed by law, unless its holding at a different date is compelled by a court of competent jurisdiction."

Our court in Board of Excise of Oklahoma County v. Board of Directors of School Dist. 27, 31 Okla. 553, 122 Pac. 520, held:

"That portion of section 5, ch. 64, S. L. of Oklahoma 1910, fixing the time for the holding of a special election in school districts, for the purpose of submitting to the qualified electors thereof the question of making an increased levy, as provided for in the said act, is, as to such time, directory only; and where, for any reason, the excise board fails to give the notice and call the election provided for therein on the said date, it may be required to do so within some reasonable time subsequent thereto."

And in the body of the opinion said:

"In our judgment, there is no substantial

reason to hold that, if the election were not called at the time fixed by the statute, the Legislature intended that it should not be called at all, especially so long as an opportunity to call the same might occur in time so that the tax might be extended and collected without disorganizing the system. There is no particular reason, except that it would probably conduce to orderly procedure, why the election for this particular purpose might not be called on one day, as well as another. It is, as denominated in the statute, a special election, and under the conditions as shown was one that might or might not occur in any year owing to the condition of the assessment and levy made by the particular municipality and the judgment and discretion of the excise board. Numerous authorities hold that statutes similar to this are directory· in their operation, and have allowed mandamus to require the calling of elections after the time fixed by statute had passed, on the theory that the law was directory, not mandatory, and that the holding of the election, and not its date, was of the substance and paramount in its importance. * * *"

22 R. C. L. 494:

"Where an executive officer of a state is obligated to perform a plain official duty, and performance is refused, an action in mandamus may be brought to compel its performance, at the instance of any person who will sustain personal injury by such refusal."

In Board of County Commissioners v. Union Pacific Ry. Co. (Colo.) 165 Pac. 244, it was held:

"Statutes prescribing the manner, form and time within which public officers are required to discharge the public functions are regarded as directory, unless there is something which shows a different intent."

We conclude that the resolution presented, never having been legally submitted to the people, remains in force and that omission or failure on the part of an elected or appointed state officer to do his duty at an appointed time ought not and does not defeat the purpose of the people, evidenced by the action of their chosen representatives in the Legislature.

The resolution having been properly adopted by the Legislature, approved by the Governor, and having been received and filed by the Secretary of State, and not having been disposed of as required by constitutional mandate, the petitioner is entitled to a peremptory writ of mandamus to require the respondents and each of them to do and perform their duties in the submission of said resolution to the people for their adoption or rejection at the next general election to be held on November 4, 1930. Let the writ issue.

MASON, C. J., and CLARK, CULLISON, SWINDALL, and ANDREWS, JJ., concur.

LESTER, V. C. J., and HUNT and HEFNER, JJ., absent.