**RUTH v. PESHEK, City Clerk.**

No. 21974.   Opinion Filed Nov. 3, 1931.

Rehearing Denied Nov. 24, 1931.

C. H. Ruth, for plaintiff in error.

A. L. Hull, for defendant in error.

CLARK, V. C. J.   This action is an appeal from the action of the city clerk of Oklahoma City holding that the initiative petition to amend the city charter of Oklahoma City was insufficient to authorize the mayor and city council of said city in calling and holding an election to submit certain amendments to the city charter to the qualified electors of the said city.

The initiative petition was presented and filed with the city clerk on October 7, 1930, and thereafter, and on the 2nd day of December, 1930, the said city clerk filed his report on the said initiative petition with the mayor and city counsel of said city holding the petition insufficient; that from his information and investigation the petitions were circulated on the representations that they were signed for other purposes than for the purposes set out in the petition, and that the signers were not, in fact, advised that they were signing a petition to amend the city charter, and for other reasons set out in the report of the employees making investigations as to the signatures, residence, etc., of the signers, which report was made a part of the report of the city clerk to the mayor and council.   That, thereafter, and on the 2nd day of December, 1930, the city council passed "resolution" accepting the report of the city clerk and denying the initiative petition.

The initiative petition called for a vote on said petition at the next general election,

to be held on the 4th day of November, 1930.

The record discloses that there were 6,678 votes cast at the city general election held Tuesday, April 2, 1929, and 19 spoiled ballots; which was the last city general election held preceding the filing of the initiative petition.

The sheets attached to the initiative petitions contained the signatures of more than 10,000 signers.

From the act of the city in refusing to call the election petitioners appealed to this court. The procedure providing for review of the act of the city officials in refusing to call the election is set forth in section 6647, C. O. S. 1921, under the heading of "Procedure in Municipalities," and provides in part as follows:

"The procedure in municipal legislation shall be, as nearly as practicable, the same as the initiative and referendum procedure for measures relating to the people of the state at large."

Section 6631, C. O. S. 1921, providing for appeal for measures relating to the people of the state at large, provides that such appeal shall be taken from the Secretary of the State to the Supreme Court, and provides the procedure therefor.

Section 6647, supra, provides that this procedure shall apply in appeals in municipal legislation.

The city charter of Oklahoma City does not provide a method of appeal in such cases as the case at bar, and even if it did, the state law providing procedure in such cases and fixing the jurisdiction thereof on appeal would be controlling.

This court in the case of Ruth v. Merrill, 43 Okla. 764, 144 P. 371, at pages 765 and 766 of the Oklahoma Report, said:

"But let that be as it may, the district court was without jurisdiction to pass on the sufficiency of the petition, and for that reason did not err in dismissing the appeal.

"In support of the contention that the court was vested with jurisdiction to entertain said appeal, petitioner says that, although the Act of March 17, 1910 (Sess. Laws 1910, c. 66), in effect repealed that part of section 6 of the act approved April 16, 1908 (Sess. Laws 1907-1908, c. 44, art. 1), which vested the district court with jurisdiction to entertain appeals from the action of the city clerk in all cases where the initiative or referendum is invoked upon matters of purely municipal concern, yet, he says that, as said section was incorporated in the city charter, adopted March 8, 1911, the effect of the adoption was to vest the district court with jurisdiction to entertain this appeal. There is no merit in this contention for the reason that the jurisdiction of the courts of this state is fixed by the law-making power of the state, and not by the law-making power of any municipality therein. It goes without saying that when the Legislature authorized the people of this municipality to adopt a charter and legislate therein upon matters of purely local and municipal concern, it did not intend to, and could not, vest the municipality with power to legislate with respect to state government."

And we therefore hold that this court has jurisdiction to entertain this appeal.

Article 9 of the charter of Oklahoma City, sec. 13, provides:

"Amendment of Charter. This charter may be amended at any time at an election at which the proposed amendment is submitted to a vote of the qualified electors of the city, by a majority vote of the electors voting at such election on such proposed amendment.

"The board of commissioners may submit any proposed amendment to this charter to a vote of the qualified electors of the city at any general election or at a special election.

"At such election the general election laws of the state shall govern."

Section 14 of the charter of Oklahoma City provides:

"Initiative and Referendum Vitalized.— Section 4-a, section 4-b, section 4-c, section 4-d and section 4-e of article 18 of the Constitution of the state of Oklahoma, under the title 'Initiative and Referendum,' are hereby adopted and made in full force and effect as if copied word for word in the body of this charter, and chapter 51 of Snyder's Compiled Laws of Oklahoma of 1909, under the title 'Initiative and Referendum,' and all sections thereof, are hereby adopted in full force and effect as if copied word for word in the body of this charter; and sections 3690, 3691 and 3692 of said chapter 51, of said Snyder's Compiled Laws of Oklahoma, making provision, among other things, for the procedure in municipalities under the Initiative and Referendum, are hereby adopted and made in full force and effect."

Section 1, article 5, of the Constitution of Oklahoma provides:

"The legislative authority of the state shall be vested in a Legislature, consisting of a Senate and a House of Representatives; but the people reserve to themselves the power to propose laws and amendments to the Constitution and to enact or reject the

same at the polls independent of the Legislature, and also reserve power at their own option to approve or reject at the polls any act of the Legislature."

Section 4-a of art. 18 of the Constitution provides:

"The powers of the initiative and referendum, reserved by this Constitution to the people of the state and the respective counties and districts therein, are hereby reserved to the people of every municipal corporation now existing or which shall hereafter be created within this state, with reference to all legislative authority which it may exercise, and amendments to charters for its own government in accordance with the provisions of this Constitution."

Section 4-b of art. 18 of the Constitution provides:

"Every petition for either the initiative or referendum in the government of a municipal corporation shall be signed by a number of qualified electors residing within the territorial limits of such municipal corporation, equal to 25 per centum of the total number of votes cast at the next preceding election, and every such petition shall be filed with the chief executive officer of such municipal corporation."

Section 4-e of art. 18 of the Constitution provides:

"When such petition demands an amendment to a charter, the chief executive officer shall submit such amendment to the qualified electors of said municipal corporation at the next election of any officers of said corporation, and if, at said election, a majority of said electors voting thereon shall vote for such amendment, the same shall thereupon become an amendment to and a part of said charter, when approved by the Governor and filed in the same manner and form as an original charter is required by the provisions of this article to be approved and filed."

The initiative petition and the sheets containing the signatures and the verifications thereof are in substantial form as provided by sections 3674, 3675, and 3676 of chapter 51 of Snyder's Compiled Laws of Oklahoma, 1909.

Section 3678, chap. 51, of Snyder's Compiled Laws of Oklahoma 1909, provides in part as follows:

"Whenever an initiative petition or referendum petition shall be filed with the Secretary of State, he shall at once proceed to examine into its sufficiency. If anyone desires to appear for or against it, he shall receive testimony and argument. * * * No objection to the sufficiency to any petition shall be considered unless the same shall have been made in writing and filed within five days after the filing of the petition."

In the case at bar no objection to the sufficiency of the initiative petition was ever filed. The law only required the signatures of 1,670 qualified electors residing within the territorial limits of Oklahoma City to the initiative petition; and the petition filed with the clerk contained over 10,000, being 8,000 more signatures than required by law. Taking the report compiled by the employees of the clerk, as to what they believe might be proven as true, the report questions 7,-133 signatures, leaving sufficient number of unquestioned signatures to uphold the initiative petition. So that, if this were the only objection made to the petition, giving it the full weight claimed, it would be inadequate to destroy the petition.

In the case of In re Initiative Petition No. 23, State Question No. 38, 35 Okla. 49, 127 P. 862, third paragraph of the syllabus, this court said:

"The names attached to an initiative or referendum petition, regularly filed in the office of the Secretary of State, sufficient in number and for the purpose of having the question therein contained submitted to an election, are presumed to be the signatures of legally qualified citizens and electors of the state, and that the post offices and places of residence given therein are correct, and to defeat the submission of said question, the burden is on the one protesting, to produce evidence sufficient to overcome this presumption, and the mere fact that of letters addressed to all the signers of the said petition at post offices given thereon, above ten per cent. were returned to the writer undelivered, or that the circulators of the petition in their affidavits attached thereto set forth more than one county as the residence of the signers of some of the different pamphlets, or that they failed or neglected in a number of instances to legibly write or typewrite the names of the signers of the said petitions on the back thereof, will not be held sufficient, in the absence of other proof, to overcome such presumption and establish that the signers of the said petition were not at the time they signed the same citizens and legal voters of the state."

Defendant in error contends that the initiative petition was insufficient because it demanded that the question be submitted at a special election to be called for that purpose November 4, 1930.

Section 4-e of art. 18 of the Constitution provides:

"When such petition demands an amendment to a charter, the chief executive officer shall submit such amendment to the

qualified electors of said municipal corporation at the next election of any officers of said corporation. * * *"

That the charter of tne said city of Oklahoma City, in section 5 of article 10 thereof, provides that municipal officers shall be voted on at elections to be held the first Tuesday in April of each odd-numbered years.

This contention of defendant in error is without merit, as the time demanded or designated for holding the election set out and stated in the initiative petition is surplusage, for the constitutional provision, supra, which rises superior to all attempted legislative enactments, expressly provides how such amendment shall be submitted. As stated by this court in the case of Looney v. Leeper, Secretary of State, 145 Okla. 202, 292 P. 365, in the third paragraph of the syllabus:

"The embodiment in the provision of the Legislature proposing a constitutional amendment that it shall be submitted at the next general election or at any special election is purely surplusage, for the Constitution by article 24, sec. 1, expressly provides how such an amendment as described in section 2 hereof, shall be submitted to the people, and that is, where a majority of each house vote for the amendment (without a two-thirds majority of each house voting for submission at a special election), the same shall be referred 'at the next regular general election'."

The people reserved to themselves the power to propose laws and amendments to the Constitution, and to enact or reject the same at the polls independent of the Legislature, and also reserved the power at their option to approve or reject at the polls any act of the Legislature. This power so reserved to the people should not be crippled, avoided, or denied by technical construction by the courts. It is the duty of the courts to construe and preserve this right as intended by the people in adopting the Constitution and thereby reserve unto the people this power.

Section 6652, C. O. S. 1921, provides:

"The procedure herein prescribed is not mandatory, but if substantially followed will be sufficient. If the end aimed at can be attained and procedure shall be sustained, clerical and mere technical errors shall be disregarded."

This section is a legislative mandate to this court to disregard mere clerical and mere technical errors.

Technical rules of construction are not favored either by this court or by the Legislature in passing upon the rights of the people to govern themselves. Rules are not the ultimate end—the main thing is justice itself and the very right of the matter. Rules are only in aid of the main thing—the working tools whereby it is attained. The administration of justice is a practical affair, an invention for the adjustment of the rights of individuals, and is not a technical and accurate science, but an applied science, adjusting itself to work out justice in all the protean shapes the dealings of mankind assume.

Ours is a government which rests upon the will of the governed. The initiative and referendum is the machinery whereby self-governing people may express their opinion in concrete form upon matters of public concern. If the people are to be self-governed, it is essential that they shall have a right to vote upon questions of public interest and register the public will.

This court in Re Initiative Petition No. 23, State Question No. 38, 35 Okla. 49, 127 P. 862, at page 58 of Oklahoma Reports, said:

"In dealing as we have above with the objections which have been urged to this petition, we believe that we are carrying out the policy of this law in the very spirit intended by the people of this state in adopting it. The right of direct legislation in the people must be administered by the officers charged with that duty in such manner as to make it operative. If technical restrictive constructions are placed upon the laws governing the initiation and submission of these measures, the purpose and policy of the people in establishing the same will be entirely defeated, and instead of becoming an effective measure for relief from evils, under which they have heretofore suffered, there will be naught but an empty shell and a continuation of the conditions for which relief in this manner has been sought."

Under the record presented to us, together with the objections presented, it is our finding and judgment that the initiative petition is valid under the form as required by the statute, and under the presumption that the signatures, of the unquestioned signers, were legally qualified citizens and electors of the state, and that the post offices and places of residence given therein are correct, bore the signatures of a sufficient number of citizens and legal voters of Oklahoma City to require the submission of the question involved to the qualified electors of the city of Oklahoma City at the next general election of any officers of said corporation, and it is ordered that the clerk of this court shall transmit all papers and

documents on file in his office relating to such petition to the city clerk of Oklahoma City, Okla., who is directed to conform to the requirements of the law in accordance with this opinion.

LESTER, C. J., and RILEY, HEFNER, and McNEILL, JJ., concur. CULLISON, J., absent. ANDREWS, J., not participating. SWINDALL and KORNEGAY, JJ., dissent.

---

KORNEGAY, J. (dissenting). I cannot agree with the logic of the opinion and the method of thought used to arrive at the conclusion. I think it violates the Constitution, the fundamental law of the state, and also the legislative enactments concerning the exercise by the people of direct legislation. I further believe that the petition, signed by the respective voters in this case, is emasculated by this opinion. The petition is before the court, and the time for holding the election is just as much a part of that petition as the asking for the election. The people who proposed this election had a right to specify the time for holding it, and to take the consequences of such specification. If they had been silent on the subject, there might have been read into it the provision of the Constitution, or the provision of the charter itself, but they expressed themselves.

Direct legislation is permitted under our Constitution, but that is quite different from what the court has held here. It is now most solemnly announced that the time for the election, in a petition of this sort, is surplusage. It was the right of the petitioners to specify when they desired this election, and they proceeded to put into the petition the following:

"To the Honorable Mayor and City Councilmen of the City of Oklahoma City, State of Oklahoma:

"We, the undersigned citizens and legal voters of the city of Oklahoma City, state of Oklahoma, respectfully order that the following proposed amendments to the charter of the city of Oklahoma City, state of Oklahoma, shall be submitted to the legal voters of the city of Oklahoma City, Okla., for their approval or rejection at the next general election, to be held on the 4th day of November, 1930."

The balance of the petition in no wise alters this part of the initiative petition.

The language set out above is not that of a petition to a superior, but is a command. To say that the voter did not know what he was about, and that this court can substitute another time, is practically to render

nugatory section 1 of article 5, and section 5 of article 5, the initiative provisions of the Constitution, and to render nugatory the legislative enactments on the subject. It also disregards the statements of this court in other cases.

The first quotation of statutory law is an extract from section 6647, C. O. S. 1921. Referring to that, we find that this is a part of the enactment of the Legislature of the year 1907-08, made to vitalize the constitutional provision for direct legislation, and reported in the Session Laws of that time at page 450. The entire section, as brought forward in the Compiled Oklahoma Statutes, is as follows:

"6647. Procedure in Municipalities. In all cities, counties and other municipalities which do not provide by ordinance or charter for the manner of exercising the initiative and referendum powers reserved by the Constitution to the whole people thereof, as to their municipal legislation, the duties required of the Governor and Secretary of State, by this chapter, as to state legislation, shall be performed as to such municipal legislation by the chief executive and the chief clerk; and the duties required by this chapter of the Attorney General shall be performed by the attorney for the county, district or other municipality. The provisions of this chapter, including those relating to preparation of arguments, shall apply to every city and town in all matters concerning the operation of the initiative and referendum in its municipal legislation on which such city or town has not made or does not make conflicting provisions. The printing and binding of measures and their distribution shall be paid for by the city in like manner as payment is provided for by the state as to state legislation by this chapter, except that delivery shall not be less than eight days before the election at which the measures are to be voted upon. The arguments shall be completed not less than twelve days before the election at which they are to be voted upon. The procedure in municipal legislation shall be, as nearly as practicable, the same as the initiative and referendum procedure for measures relating to the people of the state at large."

By reference to the Session Laws referred to at this page of the compilation, it will be found that this provision was section 17 of the original act, and section 3388 of the Revised Laws of 1910, with a change just at the end, made by the revisors, the expression, "The procedure in municipal legislation shall be, as nearly as practicable, the same as the initiative and referendum procedure for measures relating to the people of the state at large," taking the place of "It is intended to make the procedure in

municipal legislation as nearly as practicable the same as the initiative and referendum procedure for measures relating to the people of the state at large."

The section of the act providing for an appeal, and defining the court to which an appeal could be taken, was an entirely different section, and was section 6 of the original law. It gave the right of appeal and prescribed the court. It provided an appeal to this court only from the action of the Secretary of State, and provided that this court, if adjourned, should be immediately convened. In addition to these provisions the following, in exact language, is in section 6 of the original act:

"In all other cases, said appeal shall be to the district court of any county in which the petition was circulated, and said district court may hear and determine same in term time or vacation."

This section was repealed by Session Laws 1910, sec. 66, art. 1, page 121, by special reference, and there was substituted for it section 2 of the 1910 Laws, which was put into the Laws of 1910 as section 3375. By this amendment, the appeal to the district court, theretofore permitted in municipal matters, was taken away, as is held in Ruth v. Merrill, 43 Okla. 764, 144 P. 371, which is quoted from in the majority opinion. That appears as section 6631, C. O. S. 1921, and it provides for an appeal to the Supreme Court from the action of the Secretary of State only, and the court in the case of Ruth v. Merrill, cited above, the opinion being filed on September 14, 1914, and based on a petition filed on August 13, 1913, held that the jurisdiction in the district court to entertain an appeal from the action of the city clerk was taken away. It did not occur to the proponent of the initiative petition that this court had appellate jurisdiction to review the action of the city clerk at said time. Neither did it occur to the Supreme Court itself. There appears not to have been any change in the law since.

The declaration contained in that opinion, that to confer jurisdiction required the law-making power of the state to act, was but a declaration of that which is commonplace, as it is clear that the jurisdiction of all courts under our system of law must depend upon provisions conferring jurisdiction. The Legislature saw fit to take away the appeal to the district court, expressly, and did not provide an appeal to this court. Evidently, the Legislature found that the machinery of appeal was not adapted to the control of municipal officers, and that the best way to handle the situation was by resort to the original jurisdiction of the district court, as provided by the Constitution, for redress for any wrongs committed by the municipal officers in the administering of the laws prescribing their duties in calling elections on initiated measures.

As shown in the briefs now before the court, the petitioner himself, with some misgivings, makes the application here, by way of petition in error, to review the action of the city officers, evidently recognizing that when the Legislature saw fit to take away the right of appeal, expressly given in these matters, to the district court, and did not confer it upon any other court, that such right of appeal would not exist. If the Supreme Court had thought at the time it rendered the decision in Ruth v. Merrill that an appeal lay direct to this court, it would probably have so said, but there is not an intimation of that sort in that opinion.

This court has assumed to act in three cases, which are called to the attention of that court by the petitioner. One of them was In re Initiative Petition of City of Okmulgee, 89 Okla. 134, 214 P. 186. The initiative petition in that case was in the alternative as to time for holding the election, either on the 3rd of April, or at a run-off election, or special election. It was denied by the clerk as not conforming to the provisions of the charter relating to its amendment. Just what the provisions of the charter were that conflicted with the petition is not explicitly stated, but inferentially it was to provide a managerial form of government. No question was raised as to jurisdiction, and the court merely held that the clerk was within his rights in not calling the election.

Another case referred to, opinion being filed on the 1st of July, 1919, is In re Springer, 75 Okla. 118, 182 P. 713. In that case the court did nothing; holding that if an appeal were allowable, it was not taken in time, but clearly indicating that the court inclined to the view that the appeal was not allowable. The language of the court was, "An appeal from the decision of the city clerk, if allowable under the foregoing statute, must, in order to bring the case within the jurisdiction of the Supreme Court, be filed within 10 days after the decision of the city clerk. In the present case this was not done." It will be seen that the city clerk held that he had no jurisdiction of the subject-matter of the proceeding, which was a protest against the sufficiency of an initiative petition. The court dismissed the appeal, thereby denying its own jurisdiction or

that of the clerk to review the matter of the protest. Thus far, we find no positive action taken by this court.

Another case was the case of In re Referendum Petition No. 3, City of Claremore, 85 Okla. 117, 205 P. 133. This opinion was filed February 28, 1922. The court in that case assumed jurisdiction, but the parties submitted it on an agreed statement. It is far from that in this case, as one side here is claiming most vigorously that all the signatures were of qualified persons, the other side claiming the contrary. It is stated in the opinion that only one question was raised and that is, "Did the mayor err in holding the petition was insufficient to invoke a referendum?" At that time there were nine members of the court, but apparently only five participated in this decision.

This court reaches the conclusion that jurisdiction is conferred upon this court by an extract from a section that is entirely different from the jurisdiction section, and is applied to procedure alone, and modified by the revisor from "It is intended to make the procedure" to "The procedure shall be." It certainly looks as though the Legislature would have had enough words at its command, if it had desired to provide appeals from the action of a city clerk direct to this court, to have used them, and to take an extract from a section that does not bear on the jurisdiction of this court, and make out of it a provision conferring jurisdiction on the court, is a perversion. It is against the natural meaning of the language used, and the ordinary rules of construction of legislative acts. I cannot see that jurisdiction can be conferred in this way upon this court, especially when one views the difficulties attendant upon an investigation here of the various names that were on the petition, with a view of ascertaining whether fraud was being perpetrated, and with a view of purging the fraud if any was found and protecting taxpayers against the expense of holding an illegal election.

The opinion of the court, as rendered, holds that a provision in the charter of Oklahoma City would not prevail over the state law, fixing jurisdiction of courts on appeal. It cites the case of Ruth v. Merrill, referred to above, to so show. The principle announced in that decision certainly precludes the idea of jurisdiction here to review the action of the city clerk by appeal or petition in error. The discussion had in the majority opinion, in reaching the conclusion that the extract from the section on procedure confers jurisdiction on this court to review the action of the clerk or city council, is convincing that the holding that this court has jurisdiction has no logical reason for its existence, when the entire section is read, and when the entire opinion is read, not to mention the other sections of the act.

In disposing of the proposition as to the election, the court has evidently overlooked its former announcements, as contained in the very case cited, Ruth v. Merrill, the language of which is left off just before the quotation referring thereto. The court begins with that portion of the opinion that says, "But let that be as it may." However, reference to what preceded gives character to what the court is talking about, which is a clear exposition as against the conclusion here reached. The language immediately before this is as follows:

"As the object of the petition appears to be to order that certain proposed laws be submitted to the voters of the city for their approval or rejection at a special election to be held therein on the second Tuesday in December, 1913, and, as the time for holding that election has expired, it would seem that the question presented is hypothetical."

This language, of course, is what is referred to by the expression, "But let that be as it may." Most clearly, therefore, the Supreme Court of this state, by its previous utterance, is antagonistic to that portion of the present opinion which holds that the expression in the petition as to the time of holding the election is mere surplusage. One might as well say to another, "I will meet you on Friday," and undertake to say that "Friday" is surplusage, as to say that a petition, signed by 10,000 men, for an election at a certain time, merely carries an idle word when the time is fixed. The position is scarcely worthy of argument. However, as authority for it, a decision of this court of Looney v. Leeper, 145 Okla. 202, 292 P. 365, is cited to show that the time provided in the present petition for the holding of the election was mere surplusage. A chance expression in that case, applying to an entirely different proposition, might, without investigation, be conceded by a casual observer to be a foundation for the assertion contained in this opinion. However, the conditions were entirely different, and are not at all applicable.

The case of Looney v. Leeper, cited above, according to its statement, as contained on page 203, arose out of a resolution, as follows:

"Chapter 250.

"Senate Joint Resolution No. 5.

"State Officers.

"A resolution authorizing a submission of proposed amendment to the Constitution to the people for their approval or rejection, said proposed amendment being an amendment to section 3, art. 6, of the Constitution of the state of Oklahoma.

"Be it Enacted by the People of the State of Oklahoma:

"Amendment."

"Section 1. That the following proposed amendment to section 3, art. 6, of the Constitution of the state of Oklahoma, shall be referred to the people for their ratification or rejection at an election, as provided by law. Said proposed amendment shall be submitted under articles 5 and 24, of the Constitution of the state of Oklahoma. Said proposed amendment being an amendment to and in lieu of section 3, art. 6, of the Constitution of the state of Oklahoma, as follows, to wit:

" 'Section 3. No person shall be eligible to the office of Governor, Lieutenant Governor, Secretary of State, State Auditor, Attorney General, State Treasurer, Superintendent of Public Instruction, State Examiner and Inspector, except a citizen of the United States of the age of not less than 30 years, and who shall have been three years next preceding such election, a qualified elector of this state.'

"Said proposed amendment shall be submitted as provided by law in the following form:

" 'Shall the proposed amendment be adopted?'

" '(  )  Yes.'

" '(  )  No.'

"Said proposed amendment of the Constitution of the state of Oklahoma shall, upon receiving a majority of all electors voting at said election, voting in favor of said amendment, be adopted.

"Submission—When.

"Section 2. The amendment herein proposed shall be submitted to the qualified electors of this state as provided by law at the next ensuing state-wide primary election, or in a general state-wide election which may be called prior thereto.

"Adopted by the Senate March 27, 1923.

"Adopted by the House of Representatives March 27, 1923.

"Approved March 31, 1923."

It appears that this amendment was submitted at a special election, and carried about 2 to 1, the election being held on the 2nd of October, 1923. It appears that the submission at the special election was unauthorized by the Legislature, as only a majority of the members of the Legislature had voted for the resolution. There were two propositions contained in the resolution, that were separate and distinct, one requiring a majority vote, one more. One was a proposition as to the amendment; the other was a proposition as to the time of holding the election. Evidently the parties in charge did not closely examine the Constitution, which requires a two-thirds vote of each house to order a special election. In the absence of this affirmative vote, of course the Constitution fixed the time at a general election.

The Looney v. Leeper Case refers to a former case of State ex rel. Short v. State Board of Equalization, 107 Okla. 118, 230 P. 743. A reference to that case, and what is being talked about there, shows that the expression, in it, about surplusage would be no authority here for holding that the exact time fixed by the electors could be disregarded as not forming a qualifier to the petition. It all depends, of course, upon the context and what one is talking about, as to the applicability of language. A great many men would sign a petition for an election on a question fixing the time at a regular election, so as to get a full expression of the people on it, that would not be inclined to sign a petition for a special election, for only the interested parties would likely be there. The item of expense would also be involved.

In the particular case, the petition called for a special election, but it fixed the time when it should be held as being the time of holding the general election for state officers, as well as county officers, and some members of this court. It is very evident that it was regarded as material by the man who had in charge the circulation of these petitions, as he made application to this court, which was filed on December 8, 1930, for leave to amend the initiative petition, by inserting the following:

"or at a special election or subsequent general election held in the city of Oklahoma City, Okla."

—so as to make the portion read as follows:

"We, the undersigned citizens and legal voters of the city of Oklahoma City, state of Oklahoma, respectfully order that the following proposed amendments to the charter of the city of Oklahoma City, state of Oklahoma, shall be submitted to the legal

voters of the city of Oklahoma City, state of Oklahoma, for their approval or rejection at the next general election, to be held on the 4th day of November, 1930, or at a special election or subsequent general election, held in the city of Oklahoma City, Okla., and each for himself says:"

Whether or not this court assumed the authority to allow one individual to change the petition to that extent, I am not advised, but it appears on the face of it that it would be a material alteration, and if permitted would kill the petition and the chances of having an election at all as ordered by the voters, and that it could not be cured by calling it surplusage and citing some cases of legislative action wherein the Legislature should have had in view, by virtue of its oath to support the Constitution, the provisions of the Constitution. Reference to the case of State ex rel. v. Board of Equalization, referred to above, shows that the matter involved was the proposition of submitting the $15 per capita school tax amendment to the Constitution in the year 1923. It was there held that, including in the original resolution for submission of an amendment, set out therein, a provision as to the time for its submission, as follows:

"That the State Election Board is hereby instructed to prepare and submit to the voters of this state for their adoption or rejection at the next general or special election the following proposed amendment to section 9, article 10, of the Constitution of the state of Oklahoma to read as follows:"

—followed by a submission at the wrong time, would not adopt the amendment for the lack of the votes of sufficient members to call a special election. A statement made in the court's argument about the fixing of the time being surplusage in that particular case, is now classified as a legal principle, under which qualifying language, exact, absolute, and unambiguous, can be disregarded as surplusage. This is a clear misapplication. The right to appeal to the voter for the enactment of such measures as the interested parties want is a valuable one, but when the petitioners have specified, as in this case, what they want, and what they desire runs counter to the Constitution, it would be much better to say that the general and local constitutions and the charter stand at all times, and that the petition as prepared runs counter to them, than to amend the petitions that have been signed by striking out part as surplusage, as the opinion does, or by positive additions as asked for by one of the petitioners, without the written consent of the remaining petitioners.

The opinion of the majority, as I view it, nullifies the letter and spirit of the Constitution of this state. Probably no other Constitution goes so far as it does in providing for local self-government. It practically makes of a self-creating charter community, almost a self-governing unit, though providing a frame-work of representative government. As applied to the present case, the voting inhabitants may pass almost any law regulating local affairs, providing they proceed in a legal way. No one in proposing those laws is bound by an oath to support the Constitution of the state or of the United States, as prescribed by article 6 of the federal Constitution and article 15, section 1, of the state Constitution.

The officers whose conduct is here complained of are the only ones so bound. Under their official oaths, and only after taking such oaths, they are permitted to function. Presumptively they have done what they did, guided by their official oaths. By the decision of the majority, their action in investigating the things that they regarded as violative of the general law, and the city charter, is by this court rendered nugatory, without authority or jurisdiction by law conferred. Had some taxpayer of Oklahoma City, or legal voter who signed the petition, brought an action in the district court, which under the Constitution is the forum in which to investigate the matters complained of in the "petition in error," a full investigation could have been had, evidence taken, and judgment given. After this was done, proceedings in error could have been brought here, and the questions that might be involved reviewed on proceedings in error, and constitutional government would thereby have been had, and local self-government, by officers duly chosen, and through the medium of direct legislation, could have been preserved.

It appears to me that the opinion is not based on sound reason, and the court is exercising a jurisdiction not conferred by law, or its creator, the Constitution of the state. Therefore this dissent.