1998 OK 5

Bobbye CLAPSADDLE, Marian
Piotrowski, and Jerry Benton,
Petitioners,

v.

The Honorable James BLEVINS, District
Judge of the District Court of Oklahoma
County, and the Oklahoma County Elec-
tion Board, Respondents.

Kim LEE, Brian Linley, Linda
Whitehead and Harry Nelson,
Petitioners/Appellees,

v.

Reba BASINGER, City Clerk for the
City of Del City, and the City of
Del City, Respondents,

v.

Bobbye CLAPSADDLE, Marian
Piotrowski, and Jerry Benton,
Intervenors/Appellants.

Nos. 90406, 90520.

Supreme Court of Oklahoma.

Jan. 20, 1998.

Rehearing Denied March 3, 2003.

As Corrected May 12, 2003.

Kevin J. Calvey, Del City, for Appellants/Petitioners/Intervenors.

Jack B. Fried, Del City, for Respondents Reba Basinger and City of Del City.

John M. Jacobsen, Oklahoma City, for Oklahoma County Election Board.

James Howell, Midwest City, for Appellee Lee.

Geary L. Walke, Midwest City, for Appellee Lindey.

Steven M. Ditto, Midwest City, for Appellees Whitehead and Nelson.

OPALA, Justice.

¶ 1  Two questions are presented by these causes: (1) Whether the city clerk's finding that recall election petitions are sufficient for submission may be challenged in the district court and, if so, (2) whether the trial court was correct in sustaining the challenge. We answer the first question in the affirmative and the second in the negative.

## I.

### ANATOMY OF CONTROVERSY

¶ 2  Petitioners are three individuals who were responsible for collecting signatures upon petitions for an election to recall the mayor and three city council members, all of whom are elected officials of the City of Del City. Del City operates under a city charter. The city's charter provides a procedure for recall elections. That procedure is set forth in Article VIII, Sections 55–59.[1] Pursuant to

---

1. Article VIII, Sections 55–59 of the Del City Charter provide as follows:
   Section 55.  Recall authorized.
   The incumbent of any elective office may be recalled from office by the electors qualified to vote for the election of a successor to the incumbent in the manner provided herein.
   Section 56.  Recall petition.
   To initiate recall proceedings, a statement in duplicate proposing the recall of the incumbent of an elective office shall be made by five (5) or more registered qualified electors of the ward, if a councilman [councilperson] is sought to be recalled, or the city, if the mayor is sought to be recalled, and shall be filed with the city clerk after the incumbent has held the office for at least two (2) months. The statement shall also contain the reason or reasons for which the recall is sought, in not more than two hundred (200) words. Within five (5) days, the city clerk shall mail a copy of such statement by registered, certified or similar special mail to the officer at his or her residential address. Within ten (10) days after the statement is mailed to the officer, the officer may make and file with the city clerk a statement in duplicate justifying his or her conduct in office, in not more than two hundred (200) words; and the city clerk on request shall deliver one (1) copy to the person or one (1) of the persons filing the statement proposing the recall.
   The petition for recall shall include, on each page, a demand that a successor to the incumbent sought to be recalled be elected, and shall also include, on each page, before the space where the signatures are to be written the statement giving the reason or reasons for recall under the heading "STATEMENT FOR RECALL," and if the officer has filed a statement as authorized, the statement justifying his or her conduct in office under the heading "STATEMENT AGAINST RECALL." The two (2) statements shall be in letters of the same size. A copy of the petition shall be filed with the city clerk within one (1) month after recall proceedings are initiated by the filing of the first statement, and before the petition is circulated.
   A number of registered qualified electors of the city equal at least to twenty (20) per cent of the total number of votes cast for governor in the city (if mayor) or ward (if councilperson) at the last general state election at which a governor was elected, must sign the petition. Each signer shall write after his or her name his or her address within the city (if mayor), or ward (if councilperson), giving street or avenue and number, if any. Not more than one hundred (100) signatures may appear on a single copy of the petition. One (1) of the signers of each copy of the petition shall sign an affidavit on the copy stating that each signer signed the petition in his or her presence, that each signature on the petition is genuine, and that he or she believes each signer to be a registered qualified elector of the city.
   The circulated petition shall be filed with the city clerk not later than one (1) month after the

Section 56, the recall petitions were filed with the city clerk who, upon examining them, certified that they (a) were prepared and circulated as required by law and (b) bear a sufficient number of signatures for their submission to the electorate.

¶ 3 The clerk presented the certified petitions to the City Council at its regularly scheduled meeting on October 20. At that meeting the City Council passed a resolution scheduling the recall election for January 13th, 1997. This was necessary to comply with 26 O.S. § 13–102, whose provisions require notice to the county election board 60 days before the election is to be held. In accordance with Article VIII, Section 57 of the Charter, the clerk then published the resolution on October 23, 1997 in the Del City Sun newspaper, a publication of general circulation within the city.

¶ 4 On October 28, 1997 the mayor and the three council members (collectively called city officials) affected by the recall measure commenced three separate proceedings in the district court. The petitions in these cases allege that (a) the recall petitions do not bear sufficient signatures, (b) they are defective on their face and (c) the election date is invalid because it was set for a day that is later than the 40–day time limit prescribed by the city charter for scheduling a recall election. The city officials requested (1) judgment declaring that the clerk acted arbitrarily and capriciously, (2) judgment declaring that the clerk's certification of the recall petition is invalid, (3) a writ prohibiting the clerk from participating in any act in furtherance of the recall election, (4) a writ directing the city to cancel the recall election set for January 13 and (5) a writ canceling the scheduled January 13, 1998 election.

¶ 5 The first district court hearing was held on November 12, 1997. Through the use of charts [2] and the testimony of the Secretary of the Oklahoma County Election Board, the affected city officials presented evidence that *more* signatures are legally required on the recall petitions than the city clerk accepted. The evidence before the district court sought to demonstrate that it was impossible to determine the exact number of registered, qualified Del City electors who

---

filing of a copy as provided above. Within one (1) month after date of filing of the circulated petition, the city clerk shall examine it and ascertain whether it has been prepared and circulated as required, and whether the required number of registered qualified electors of the city have signed it. He or she shall then attach his or her certificate to the petition. If his or her certificate states that the petition has not been prepared and circulated as required and/or lacks a sufficient number of signatures, the petition shall have no effect, and recall proceedings may not be initiated against the same councilperson or mayor within three (3) months after the date of the certificate. But, if the city clerk's certificate states that the petition has been prepared and circulated as required and has a sufficient number of signatures, he or she shall submit the petition and certificate to the council at its next meeting.

Section 57. Recall election; council to order.

The council, by resolution or ordinance passed within ten (10) days after receiving the petition and certificate of the city clerk, shall order and fix the date for a recall election, which shall be held not less than thirty (30) days, nor more than forty (40) days, after passage of the resolution or ordinance. The city clerk shall cause the resolution or ordinance ordering the election to be published in full in a newspaper of general circulation within the city within ten (10) days after its passage; and such publication shall be sufficient notice of the election.

The qualified electors of the city (if mayor) or ward (if councilperson) may vote in a recall election on the election of successors to more than one (1) incumbent of an elective office. Section 58. Recall election; how held.

The recall election shall be an election to fill the office held by the incumbent sought to be recalled. Any qualified person, including the incumbent, may file as a candidate for the office; and candidates must file at least fifteen (15) days before the recall election. There shall be no primary before the recall election, and the candidate receiving the greatest number of votes in the recall election shall be elected. If a candidate other than the incumbent is elected, the incumbent shall be recalled from office effective as of the time when the result of the election is certified. The said successful candidate must qualify within one (1) month thereafter; and if he or she fails to do so, the office shall be vacant, and the council shall fill the vacancy. A candidate thus elected and qualifying shall serve for the unexpired term. If the incumbent is a candidate and receives the greatest number of votes, he shall continue in office without interruption; and no other petition for his or her recall may be filed within six (6) months after the election.

2. Copies of these charts, admitted as trial exhibits, are attached to this opinion and marked as Appendices 1–4.

had cast votes for governor in the 1994 general election.[3] This is so because the precinct registries, which bore the signatures of the voters, were destroyed 24 months *after that election.* The only records still in existence show totals by precinct only, and the precincts that included Del City also embraced other parts of Oklahoma County. It was even more difficult to determine the number of electors who voted in each of the various wards. Each precinct contained parts of more than one ward.[4] City officials claimed the clerk sometimes failed to include some parts of wards in her calculation of the number of signatures the recall petitions must bear.

¶ 6  It was shown that the clerk failed to consider the absentee ballots. She had assumed that the precinct totals furnished by the official county election board tally she received included the absentee ballots (because they had been previously included), but in fact they did not. The absentee voter totals for the entire county had been lumped into several "precincts" and there was no way to determine how many absentee ballots had come from Del City voters.

¶ 7 The charts presented by the city officials show that for each recall petition the clerk verified more signatures than the required 20 percent, determined on the basis of the clerk's calculations of the total number of votes cast for governor in the last preceeding (1994) election. Although the clerk did not count absentee ballots, she used the totals from precincts that included other Oklahoma County voters. The charts sought to demonstrate that the number of signatures verified by the clerk on each petition was insufficient because they included all of the possible precincts pertaining to each ward, and *all* of the absentee ballots. Thus, whole precincts were

counted more than once, which resulted in a total number of votes much higher than their actual number should have been.

¶ 8  The clerk's estimate of the necessary number of signatures (it could only be an estimate under the circumstances) did not appear to be arbitrary or capricious. The clerk testified there were more signators on each petition than the number she verified. She stated she stopped verifying signatures when she decided she had approved enough in number to declare the total to be legally sufficient.

¶ 9  The trial court *refused to hear any other evidence. Neither the clerk nor the proponents of the recall petition* (who were permitted to intervene in the case) *were allowed to present evidence.*

¶ 10  On November 12, 1997 the trial court filed a signed memorial giving judgment to the city officials. This decision is rested on his finding that the total number of qualified electors (who voted for governor in 1994) was unascertainable and thus it was impossible for the city clerk to make any valid decision concerning the sufficiency of the number of signatures the recall petitions must bear. A later journal entry, filed on November 18, 1997, declared the recall petitions invalid and the clerk's certification ineffective. The judge further ordered that the election, set for January 13, 1998, be cancelled.

¶ 11  The proponents of the recall petitions filed in this court an appeal as well as an application to assume original jurisdiction of their petition for a prerogative writ. Both of these causes challenge the trial court's November 12th order. By its November 20, 1997 order this court suspended the effectiveness of the November 12, 1997 ruling that

---

3.  To comply with Article VIII, § 56 of the Del City Charter, the clerk needed to know the number of votes cast for governor in the 1994 general election in order to calculate whether the recall petitions bore the sufficient number of signatures. Section 56 provides that "a number of registered qualified electors of the city equal to at least twenty (20) per cent of the total number of votes cast for governor in the city (if mayor) or ward (if councilperson) at the last general state election at which a governor was elected, must sign the petition."

4.  Precincts 20–27 included Del City and parts of Oklahoma County. Precinct 20 included parts of Del City wards 2 and 4 and Smith Village (not part of Del City). Precinct 21 included part of ward 3. Precinct 22 included part of ward 1. Precinct 23 included parts of wards 1 and 3. Precinct 24 included part of ward 2. Precinct 25 included parts of wards 1, 2, and 3. Precinct 26 included part of ward 4. Precinct 27 included part of ward 4 and Oklahoma County.

cancelled the recall election, thus allowing the election to proceed. The two causes (the appeal and the original action) were consolidated. We now dispose of them by a single opinion.

## II.

### THE *EXCLUSIVE* PROCEDURE FOR CHALLENGING A CITY CLERK'S CERTIFICATION OF THE SUFFICIENCY OF A RECALL PETITION STANDS PRESCRIBED BY THE PROVISIONS OF 11 O.S.1991 § 15–104

¶ 12 In this court's November 20th order we asked the parties to explain if the district court proceedings were brought and held pursuant to the provisions of 11 O.S.1991 § 15–104(B).[5] The cited statute regulates the procedure to be followed when an initiative or referendum petition is filed with a municipal court clerk. *All of the parties conceded the district court proceedings held in the present case were not brought according to the terms of § 15–104.* The city officials argued that § 15–104, which applies on its face to initiative and referendum petitions, does not govern recall petitions. We reject their contention as flawed.

¶ 13 Initiative, referendum and recall elections all constitute constitutionally sanctioned methods for *popular intervention in the affairs of government,* which are intended to give the electorate an opportunity to participate directly in the law-making process .

and a check upon the conduct of officeholders. *State v. Pulliam,* 165 Okl. 70, 25 P.2d 64 (1933), *In re Initiative Petition No. 2 of Cushing,* 157 Okl. 54, 10 P.2d 271, 275 (1932). All three measures—initiative, referendum and recall—must hence be treated as falling under the same procedural rubric.

¶ 14 The terms of § 15–104 provide the *exclusive procedure* for contesting the sufficiency of a recall petition.[6] Before the enactment of 11 O.S. § 15–104 in 1978, there was *no* state procedure for challenging in the district court the clerk's determination of the sufficiency (or insufficiency) of a recall petition. *City Council of the City of McAlester v. Milwee,* 31 Okl. 620, 122 P. 173 (1912), *Dunham v. Ardery,* 43 Okl. 619, 143 P. 331 (1914). Neither does the Del City charter provide a contest procedure.

¶ 15 No one in this cause followed the process prescribed by § 15–104. This statement also applies to the actions of the clerk, who did not publish her findings in accordance with the provisions of § 15–104(A). The publication, if made, would have triggered the time to file a § 15–104(B) contest.

¶ 16 We hold today that the exclusive procedure to be followed by the clerk after certifying the sufficiency (or insufficiency) of recall petitions, and to be invoked by any protestant, is that set forth in 11 O.S.1991 § 15–104. To this holding we give prospective effect. We do not rest the judgment's reversal on the use of incorrect procedure for

---

**5.** 11 O.S. 1991 § 15–104 provides as follows:

**§ 15–104. Publication announcing the filing of petition—Protests**

A. When signed copies of a petition are timely filed with the clerk, the clerk shall make a physical count of the number of signatures appearing on the petitions. He shall then publish, in at least one (1) newspaper of general circulation in the municipality, a notice of the filing and the apparent sufficiency of insufficiency of the petition. The notice shall also state that any qualified elector of the municipality may file a protest to the petition or an objection to the count made by the clerk.

B. A protest to the petition or the count of signatures shall be filed in the district court of the county in which the situs of the municipality is located within ten (10) days after the publication. Written notice of the protest shall be served on the clerk and the parties who filed the petition. In the case of the filing of an objection

to the count, notice shall be served on any party filing a protest. The district court shall fix a day, not less than ten (10) days after the filing of a protest, to hear testimony and arguments for and against the sufficiency of the petition. A protest filed by anyone, if abandoned by the party filing it, may be revived within five (5) days by any other qualified elector. After the hearing, the district court shall decide whether such petition is in form required by law.

**6.** In election protests the contest regime prescribed by the applicable statute is exclusive of all other remedies. *Fite v. Lacey,* 1984 OK 83, 691 P.2d 901, *Baggett v. State Election Board,* 1972 OK 132, 501 P.2d 817, 821, *Wagoner County Election Board v. Plunkett,* 1956 OK 329, 305 P.2d 525, 529–530, *Brown v. Branson,* 139 Okl. 271, 270 P. 63, 66 (1928).

challenging the recall petitions. Obscure legislative enactments should be kept from becoming a veritable trap for the unwary. By giving prospectivity to our pronouncements on novel points of ambiguously crafted statutory procedure for which no extant caselaw exposition can be found, we protect the affected litigants from losing valuable remedial opportunities.[7]

## III.

### THE TRIAL COURT ERRED IN FINDING THAT THE PETITIONS ARE INVALID AND IN ORDERING THAT THE ELECTION BE CANCELLED

¶ 17 The burden rested on the city officials to show that the recall petitions are unsupported by a sufficient number of signatures. *Ruth v. Peshek*, 153 Okl. 147, 5 P.2d 108, 111 (1931), *Fite v. Lacey*, 1984 OK 83, 691 P.2d 901. The signatures on the recall petitions are presumed to be those of qualified voters. The onus is cast on protestants to produce proof showing that specific signatures should not be counted. *Ruth v. Peshek*, supra. That burden was not met here.

¶ 18 The city officials produced two witnesses who claimed they did not know what they were signing and requested that their names be stricken. The remainder of proof centered on the question whether the clerk validated a sufficient number of signatures. It was uncontroverted that there were more signatures on each petition than the clerk validated by her count. Because there was no proof to the contrary, those additional signatures must be accepted as valid. The total number of signators for recall of Lee is 1550; the total for recall of Linley is 423; for recall of Whitehead the total is 464, and for Nelson it is 494. Based on the proof submitted, at a maximum, only

two of the questioned signatures may be in doubt.

¶ 19 The trial court erred in *refusing* to allow the intervenors (the proponents of the recall petitions) and the clerk to put on any evidence in support of the clerk's decision. To put it simply, the adjudicative process had not been completed when the judge made the ruling. It is the policy of the law to afford every party, including intervenors, a fair opportunity to present evidence and argument.[8]

¶ 20 Moreover, the county election board is estopped to deny the accuracy of the figures provided the clerk in response to her initial request. *Burdick v. Independent School District No. 52 of Oklahoma County*, 1985 OK 49, 702 P.2d 48, 55.[9] The absentee ballot information should not have been considered. Another reason for excluding reference to absentee ballots is that the city officials (who had the burden of proof) did not establish that there were *any* Del City voters among those electors whose vote should have been included in determining the correct number of signatures the recall petitions must bear.

¶ 21 Similarly, the city officials did not sustain their burden of production with respect to the number of signatures necessary for the council members' recall election. Their proof is tainted by the double counting of the precincts with the overlapping wards. In the charts presented by the city officials both precincts 20 and 25 were *counted twice*. Neither did the city officials show which percentage of voters from each ward would be allocable to an affected precinct. In short, they could not demonstrate that the clerk's method was incorrect. Again, the trial court placed the burden of production and persuasion on the wrong party—the clerk. This mistake was further compounded by the court's error in not permitting the clerk to

---

7. *Poafpybitty v. Skelly Oil Company*, 1964 OK 162, 394 P.2d 515, 520 (1964), *Isbell v. State*, 1979 OK 156, 603 P.2d 758, 760, (Opala, J. concurring).

8. Okla. Const Art. 2, § 6, *Knell v. Burnes*, 1982 OK 35, 645 P.2d 471, 474, *Tulsa Rock Co. v. Williams*, 1982 OK 10, 640 P.2d 530, *Railway Express Agency v. Jansen*, 1960 OK 117, 351 P.2d

1071, 1075, *Sharum v. Dean*, 113 Okl. 95, 239 P. 666, 667 (1925).

9. The official figures furnished to the clerk, by which the county election board stands bound, also bind us. Recall petition contests cannot disregard or pierce through the *official* figures supplied by the county election board.

present evidence that would support the correctness of the calculation method used..

¶ 22 Because the city officials failed to sustain their burden of production and persuasion (to show that the number of signatures borne by the recall petitions is insufficient), the trial court erred in banning the election.

¶ 23 In addition to the city officials' failure to sustain their burden of production and persuasion regarding the sufficiency of the signatures, these litigants also failed to show that the actions of the clerk were arbitrary, fraudulent and capricious. In *Dunham v. Ardery,* 43 Okl. 619, 143 P. 331 (1914), we held that a city clerk is vested with a discretionary power to determine whether a recall petition is sufficient, and a writ will issue only when it is shown that the clerk was acting arbitrarily or fraudulently.

¶ 24 The trial court also failed to take into its consideration the well-settled doctrine that, where possible, the validity of an election quest will be judicially upheld. *Cooper v. Dix,* 1989 OK 55, 771 P.2d 614, 617, *Quinn v. City of Tulsa,* 1989 OK 112, 777 P.2d 1331, 1340–41. The terms of Art. 3 § 5, Okl.Const., provide that no civil or military authority shall interfere *to prevent the free exercise of the right of suffrage.* The trial court's decision was hence contrary to law. It must be reversed.[10]

## IV.

## THE ELECTION DATE WAS PROPERLY SET TO COMPLY WITH THE TERMS OF 26 O.S.1991 § 13–102

¶ 25 Because we reverse the trial court's ruling which condemns the recall petitions as insufficient, we must discuss the other flaw raised by the city officials. The latter pertains to whether the setting of the election for January 13, 1998 is valid even though the date is beyond the time limit prescribed by the city charter.

¶ 26 The city charter provides (at Section 57) that the recall election must be scheduled between 30 and 40 days from the passage of the resolution calling for the election. If the charter were to be followed, the election in this case should have been scheduled for no later than November 29, 1997. In order to comply with the provisions of 26 O.S. § 13–102, which call on the governing body of a municipality to submit a resolution to the county election board not fewer than 60 days before a special election is to be held, the recall election was scheduled for January 13, 1998.

¶ 27 The scheduling of the election complies with the mandate of § 13–102, but does not accord with the city charter provisions. The city officials argue that the charter controls over the state statute, thus rendering the election date infirm. *The city officials are incorrect.*

¶ 28 A city charter will control over a contrary state statute only when the matter at hand is one of purely local concern. The setting of a special municipal election, *which must be conducted by the county election board under the oversight of the State Election Board, is not a matter of local concern.* It is clear that, as the Secretary of the Oklahoma County Election Board testified at length, the election board requires a minimum of 60 days to prepare adequately for an election. State law will on this point supplant nonconforming city law. *Simpson v. Dixon,* 1993 OK 71, 853 P.2d 176, 183–187.

¶ 29 Aside from the practical reasons why the holding of a municipal election is a matter of state, rather than local, concern, the State also has a vital interest in providing the people with a corruption-free regime for elections to be held upon initiative, referendum and recall measures. Oklahoma's legislature is required to pass laws that would prevent both fraud and corruption from clouding the process by which popular will is to be expressed. Art. 5 § 8, Okl. Const. The provisions of 26 O.S. § 13–102 are clear-

---

10. Contested issues of law are reviewable (in all actions, suits and proceedings) by a de novo standard. An appellate court claims for itself plenary, independent and non deferential authority to re-examine nisi prius legal rulings. *Salve Regina College v. Russell,* 499 U.S. 225, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

ly designed to ensure orderly and corruption-free conduct of vital municipal elections.

¶30 The election date set for January 13, 1997 is hence free of legal infirmity.

## V.

## THIS CAUSE IS NOT MOOT

¶31 On January 13, 1997 the recall election was held as scheduled. It was announced that the city officials were all retained in office. The consolidated cause, though now rendered moot by the election results, will not be dismissed. It falls within two long-established *subclasses* the court may take out of the general rule—the so-called public-interest and the likelihood-of-recurrence exceptions to the mootness doctrine. See *Lawrence v. Cleveland County Home Loan Authority*, 1981 OK 28, 626 P.2d 314, 315–316.

## SUMMARY

¶32 The exclusive procedure to protest the city clerk's decision on the sufficiency (or insufficiency) of a recall petition is that prescribed by the terms of 11 O.S. § 15–104. This part of today's ruling is made prospective to operate from the effective date of the court's opinion. The trial court's decision is reversed with directions to enter judgment in favor of the respondents City of Del City and Reba Basinger, City Clerk. In the attack launched on the sufficiency of the signatures the contesting city officials failed to sustain their burden of production and persuasion. The order cancelling the election cannot stand. The date chosen for the election is confirmed as legally valid. It was set in compliance with the applicable state statute that supplants all contrary city-charter provisions.

TRIAL COURT'S JUDGMENT REVERSED AND THE CAUSE REMANDED WITH DIRECTIONS TO ENTER JUDGMENT IN FAVOR OF THE RESPONDENTS.

¶33 HODGES, LAVENDER, HARGRAVE, OPALA and ALMA WILSON, JJ., concur.

¶34 KAUGER, C.J., SUMMERS, V.C.J., and SIMMS and WATT, JJ., concur in part and dissent in part.

## APPENDIX 1
### MAYOR KIM K. LEE

| Precinct | 1994 Gubernatorial Election | Votes Counted City Clerk | Signatures Verified by Clerk | City Clerk's 20% | 20% | Signature Deficiency |
|---|---|---|---|---|---|---|
| 550020 | 598 | 598 | | 120 | 120 | |
| 550021 | 1,115 | 1,115 | | 223 | 223 | |
| 550022 | 918 | 918 | | 184 | 184 | |
| 550023 | 831 | 831 | | 166 | 166 | |
| 550024 | 1,175 | 1,175 | | 235 | 235 | |
| 550025 | 873 | 873 | | 175 | 175 | |
| 550026 | 1,505 | 1,505 | | 301 | 301 | |
| 550027 | 110 | 110 | | 22 | 22 | |
| Sub total | 7,125 | 7,125 | 1,439 | 1,426 | 1,426 | -0- |
| A9554 | 218 | -0- | | -0- | 43.6 | |
| A9555 | 268 | -0- | | -0- | 53.6 | |
| A9784 | 183 | -0- | | -0- | 36.6 | |
| A9785 | 273 | -0- | | -0- | 54.6 | |
| Sub total | 942 | -0- | -0- | -0- | 188.4 | |
| Total | 8,067 | 7,125 | 1,439 | | 1,613.4 | ( 174.4) |

mayor.cht

PLAINTIFF'S EXHIBIT

# APPENDIX 2

## WARD 2 - COUNCIL PERSON:  LINDA WHITEHEAD

| Ward 2 Precincts | 1994 Gubernatorial Election | Votes Counted by City Clerk | Signatures Verified by Clerk | City Clerk's 20% | 20% | Signature Deficiency |
|---|---|---|---|---|---|---|
| 550020 | 598 | 598 | | 120 | 120 | |
| 550024 | 1,175 | 1,175 | | 235 | 235 | |
| 550025 | 873 | -0- | | -0- | 174 | |
| Sub total | 2,646 | 1,773 | 382 | 355 | 529 | (147) |
| A9554 | n/a | -0- | n/a | -0- | | |
| A9555 | n/a | -0- | n/a | -0- | | |
| A9784 | 183 | -0- | -0- | -0- | 36 | |
| A9785 | 273 | -0- | -0- | -0- | 54 | |
| Sub total | 456 | -0- | -0- | | 91 | (91) |
| Total | 3,102 | 1,773 | 382 | 355 | 620 | (238) |

wtbd.clzt

PLAINTIFF'S EXHIBIT 6

# APPENDIX 3

## WARD 3 - COUNCIL PERSON: HARRY NELSON

| Ward 3 Precincts | 1994 Gubernatorial Election | Votes Counted by City Clerk | Signatures Verified by Clerk | City Clerk's 20% | 20% | Signature Deficiency |
|---|---|---|---|---|---|---|
| 550021 | 1,115 | 1,115 | | 223 | 223 | |
| 550023 | 831 | -0- | | -0- | 166 | |
| 550025 | 873 | 873 | | 175 | 175 | |
| Sub total | 2,819 | 1,988 | 424 | 398 | 564 | (140) |
| A9554 | n/a | n/a | | | | |
| A9555 | n/a | n/a | | | | |
| A9784 | 183 | -0- | | -0- | 36 | |
| A9785 | 273 | -0- | | -0- | 54 | |
| Sub total | 456 | -0- | -0- | -0- | 91 | (91) |
| Total | 3,275 | 1,988 | 424 | 355 | 655 | (231) |

hnelson.cnt

PLAINTIFF'S EXHIBIT 7

## APPENDIX 4
### WARD 4 - COUNCIL PERSON:  BRIAN  LINLEY

| Ward 4 Precincts | 1994 Gubernatorial Election | Votes Counted by City Clerk | Signatures Verified by Clerk | City Clerk's 20% | 20% | Signature Deficiency |
|---|---|---|---|---|---|---|
| 550020 | 598 | -0- | | -0- | 119.6 | |
| 550026 | 1,505 | 1,505 | | 301 | 301 | |
| 550027 | 110 | 110 | | 22 | 22 | |
| Sub total | 2,213 | 1,615 | 376 | 323 | 442.6 | (66.6) |
| A9554 | 218 | -0- | | -0- | 43.6 | |
| A9555 | 268 | -0- | | -0- | 53.6 | |
| A9784 | 183 | -0- | | -0- | 36.6 | |
| A9785 | 273 | -0- | | -0- | 54.6 | |
| Sub total | 942 | -0- | -0- | -0- | 188.4 | |
| Total | 3,155 | 1,615 | 376 | 323 | 631 | (255) |