2003 OK 104

In Re INITIATIVE PETITION NO. 27 OF THE CITY OF OKLAHOMA CITY, Oklahoma.

No. 98,781.

Supreme Court of Oklahoma.

Dec. 9, 2003.

James R. Moore, Douglas D. Vernier, James R. Moore & Associates, P.C., Oklahoma City, OK, for the Petitioners Michael Anderson and Roscoe Lewis.

Brett Robinson, Oklahoma City, OK, pro se Respondent.

Kenneth Dale Jordan, Assistant Municipal Counselor, Oklahoma City, OK, for Respondent City of Oklahoma City, Oklahoma.

HODGES, J.

¶ 1 The issue before this Court is whether Initiative Petition No. 27 of the City of Oklahoma City, Oklahoma, violates article XVIII, section 4(a) of the Oklahoma Constitution. We hold that Initiative Petition No. 27 addresses administrative matters outside the scope of the powers of initiative reserved to the people of municipal corporations under article XVIII, section 4(a).[1]

## I. SUBSTANCE OF INITIATIVE PETITION NO. 27

¶ 2 Initiative Petition No. 27 (Petition) covers Oklahoma City's permanent non-supervisory and non-confidential employees as defined by the National Labor Relations Board. Employees in the police and fire departments are excluded. The Petition would provide for the creation of a Labor Relations Board and for the selection of arbitrators. It would establish a procedure for collective bargaining and for arbitration of unresolved issues.[2]

¶ 3 If the Petition were adopted, when the covered employees file a petition to be represented by a collective bargaining agent or when Oklahoma City files a petition stating that a labor organization claims to be the exclusive employee representative, the Labor Relations Board (Board) would be convened. The Board (1) would review the petition, (2) would establish procedures for conducting a hearing, (3) if needed, would authorize an election to determine the employee representative, and (4) would certify an exclusive employee representative.

¶ 4 The Board would deal with unfair labor practices which are defined in the Petition as acts which interfere with the collective bargaining process. When dealing with unfair labor practices, the Board could establish procedures for hearings and could hear disputes. The Labor Relations Board could grant appropriate relief including issuing orders prohibiting a bargaining agent or Oklahoma City from engaging in any unfair labor practices.

¶ 5 Under the Petition's provisions, a panel of three arbitrators would hear unresolved employee contract issues between Oklahoma City and the employees, acting through their representative. Oklahoma City would submit an offer to the arbitration panel on the unresolved issues, as would the employees. The arbitration panel would chose between the two offers. Oklahoma City could accept the panel's decision. If Oklahoma City rejected the panel's decision, the two offers would be submitted to a vote of the Oklahoma City residents.

¶ 6 The Petition has other provisions. It would prohibit employees from participating in strikes and work stoppages or slowdown. The arbitrators' fees and expenses would be allocated between Oklahoma City and the employee bargaining agent. Lastly, the Petition contains a severability clause.

## II. HISTORY OF INITIATIVE PETITION NO. 27

¶ 7 The Petition, together with signature pages and signature verifications, was received by the Clerk of Oklahoma City (Clerk) on December 12, 2002. The Clerk caused notice to be published as required by law. On December 20, 2002, Brett Robinson filed a protest with the Clerk. Robinson protested on the grounds that the Petition "encompasses matters outside the scope of initiative and referendum for municipal corporations and involves administrative functions of elected officials in contravention" of the Oklahoma Constitution as interpreted in *Fite v. Lacey*.[3]

---

**1.** Okla. Const. art. XVIII, § 4(a), provides:

The powers of the initiative and referendum, reserved by this Constitution to the people of the State and the respective counties and districts therein, are hereby reserved to the people of every municipal corporation now existing or which shall hereafter be created within this State, with reference to all legislative authority which it may exercise, and amendments to charters for its own government in accordance with the provisions of this Constitution.

**2.** This type of arbitration is known as interest arbitration which is the process used to resolve impasses which parties reach when negotiating new contract terms. *Fraternal Order of Police v. City of Choctaw*, 1996 OK 78, ¶ 9, 933 P.2d 261, 265.

**3.** 1984 OK 83, 691 P.2d 901.

¶ 8 After a hearing on the protest, the Clerk sustained the protest, finding that the Petition was substantially the same as the initiative petition invalided by this Court in *Fite.* The Clerk held that the Petition was legally insufficient to be submitted to a vote of the people. The Proponents filed an appeal in this Court. By order this Court determined the procedure to be followed in this case.

### III. MOTION TO DISMISS CLERK

■ ¶ 9 The Proponents are seeking to have the Clerk dismissed as a respondent. Section 15–102 permits cities to provide their own procedures for exercising their initiative and referendum powers. Oklahoma City adopted the procedures set forth in title 34 of the 1951 Oklahoma Statutes. If appeal is taken from a city clerk's decision, the procedures require the appellant to serve notice on the city clerk.[4] Under this provision, not only does the Clerk have standing as a defendant, but is a necessary party.[5] By virtue of the ordinance, the Clerk is brought into Court, rendered subject to the Court's jurisdiction, and subject to any orders involving the performance of the Clerk's duties which may be enforced against the Clerk.[6] Thus, the motion to dismiss is denied.

### IV. LEGAL SUFFICIENCY OF THE PETITION

■ ¶ 10 This Court has long held that the powers of initiative and referendum reserved to the people of a municipality, "apply only to legislative matters and not to administrative acts."[7] The line between legislative matters and administrative acts is not always clear.[8] As a general rule, "[a]ctions relating to subjects of a permanent and general character are usually regarded as legislative, and those providing for subjects of a temporary and special character are regarded as administrative."[9] Essentially, "if the proposed initiative would put into execution previously declared policies or laws, it is administrative in nature."[10] When an extensive knowledge of fiscal matters are "of prime importance in the decision-making process which [is] the topic of the initiative petition," the petition is usually administrative.[11] Because wages, benefits, working conditions, and hiring and firing decisions require a comprehensive knowledge of a municipality's fiscal affairs, decisions regarding personnel matters are usually administrative.[12]

¶ 11 In *In re Supreme Court Adjudication of Sufficiency of Initiative Petition of Tulsa,*[13] the City Auditor of Tulsa had determined that an initiative petition establishing a minimum number of police officers and setting salaries for police officers was legally insufficient.[14] This Court upheld the auditor's finding because the subject of the petition was administrative in nature.[15]

¶ 12 In *Fite,* the initiative petition proposed collective bargaining and binding arbi-

4. Okla. Stat. tit. 34, §§ 8, 51 (1951).

5. *Cattron v. Hough,* 1933 OK 398, 23 P.2d 677, 679 (1933).

6. *See In re Initiative Petition No. 23, State Question No. 38,* 1912 OK 611, 127 P. 862, 864.

7. *Brazell v. Zeigler,* 1910 OK 193, 110 P. 1052; *Fite v. Lacey,* 1984 OK 83, ¶ 16, 691 P.2d 901, 904; *See* Okla. Const. art. XVIII, § 4(a). Section 4(a)'s restriction does not apply to acts of the Oklahoma Legislature, which are governed by article V, § 36. Article V, § 36 provides:
   The authority of the Legislature shall extend to all rightful subjects of legislation, and any specific grant of authority in this Constitution, upon any subject whatsoever, shall not work a restriction, limitation, or exclusion of such authority upon the same or any other subject or subjects whatsoever.

8. *See* 5 Eugene McQuillin, The Law of Municipal Corporations ¶ 16.57 (3rd ed.1996)

9. *Id.* at ¶ 16.55; *Fite,* 1984 OK 83 at ¶ 17, 691 P.2d at 905.

10. McQuillin, at § 16.55.

11. *Fite,* 1984 OK 83 at ¶ 19, 691 P.2d at 905.

12. *See Fite,* 1984 OK 83, 691 P.2d 901; *In re Supreme Court Adjudication of Sufficiency of Initiative Petition in Tulsa,* 1979 OK 103, 597 P.2d 1208.

13. 1979 OK 103, 597 P.2d 1208.

14. *Id.* at ¶ 2, 597 P.2d at 1209.

15. *Id.* at ¶ 9, 597 P.2d at 1211.

tration for firefighters and police officers of the City of Muskogee.[16] Because of the impermanence of economic conditions effecting decisions "involving wages, hours or other conditions of employment," the subject of the initiative petition, collective bargaining and arbitration, was administrative.[17]

¶ 13 In *Fite* and *Initiative Petition in Tulsa,* the subject matter of the petitions, personnel matters, was the determining factor. The fact that the petitions in these cases required binding arbitration was not decisive. The Petition in this case involves the same subject matter as the petitions in *Fite* and *Initiative Petition of Tulsa:* employee wages, hours and other conditions of employment. Thus, the subject of the Petition in this case is administrative, not legislative, and contravenes article XVIII, section 4(a) of the Oklahoma Constitution.

¶ 14 The Proponents rely on *Fraternal Order of Police v. City of Choctaw.*[18] In *Fraternal Order of Police,* this Court upheld the Fire and Police Arbitration Act[19] (the Act) against an attack that it violated title XVIII, section 4(a) of the Oklahoma Constitution. This Court found it unnecessary to address whether the Act was administrative because it was not presented through the initiative process and, thus, not restricted by title XVIII, section 4(a). Proponents' reliance on *Fraternal Order of Police* is misplaced.

## V. SEVERABILITY

¶ 15 The Proponents argue: (1) this Court should declare only the interest arbitration provisions offensive, (2) they should be severed, and (3) the remaining provisions should be submitted to a vote. The Protestant attacked the entire Petition before the City Clerk. When ruling on the Petition, the Clerk did not confine the decision to certain provisions but found that the Petition was "legally insufficient and invalid on its face"

because it involved administrative functions in contravention of the Oklahoma Constitution.

¶ 16 Because the collective bargaining and interest arbitration provisions violate the Oklahoma Constitution, this Court must consider whether they are severable.[20] The remaining portions of the Petition prohibit city employees from engaging in work stoppages and slowdowns and allow city employees to select a collective bargaining agent. Offending provisions of an initiative petition are not severable if they are fundamental to the petition.[21] Because we view the collective bargaining and interest arbitration provisions as fundamental to the petition, we do not view them as severable.

## VI. CONCLUSION

¶ 17 In conclusion, the Clerk correctly found the subject of Initiative Petition No. 27 of the City of Oklahoma City was administrative and, thus, the Petition was legally insufficient for a vote of the residents.

RELIEF DENIED.

¶ 18 WATT, C.J., OPALA, V.C.J., LAVENDER, HARGRAVE, KAUGER, WINCHESTER, JJ., concur.

¶ 19 SUMMERS, BOUDREAU, JJ., (joins SUMMERS, J.), concur in part; dissent in part.

SUMMERS, J., Concurring in part and dissenting in part and joined by BOUDREAU, J.

¶ 1 I concur in assuming jurisdiction. We should assume original jurisdiction for the purpose of explaining that the proper forum for reviewing a municipal clerk's decision is a District Court. I would make this ruling prospective, and then address the merits of the controversy before us. On the merits, I

---

16. *Fite,* 1984 OK 83 at ¶ 1, 691 P.2d at 902.

17. *Id.* at ¶¶ 19, 21, 691 P.2d 905.

18. 1996 OK 78, 933 P.2d 261.

19. Okla. Stat. tit. 11, §§ 51–101 to 113 (Supp. 1979).

20. *In re Initiative Petition No. 315, State Question No. 553,* 1982 OK 15, ¶ 5, 649 P.2d 545, 548.

21. *Id.*

respectfully disagree with the Court's opinion, and I would not invalidate a proposed municipal initiative petition that presents a question on whether a municipality will use collective bargaining with its employees.

## I. Assuming Original Jurisdiction

¶ 2 This Court has assumed original jurisdiction to explain novel procedural questions. *Christian v. Gray*, 2003 OK 10, ¶ 3, 65 P.3d 591, 596. We have also made our answer to a novel procedural question on 11 O.S. § 15–104 operate prospectively. *Clapsaddle v. Blevins*, 1998 OK 5, ¶ 16, 66 P.3d 352, 357. One issue in this proceeding is whether the proper appellate forum is in a District Court pursuant to § 15–104 or in this Court pursuant to the city's charter. I would thus assume original jurisdiction pursuant to Art. 7 § 4 of the Constitution to explain that a provision of a municipal charter may not vest jurisdiction of certain controversies in a particular state court.

¶ 3 I would also assume jurisdiction to decide the merits of the controversy. Not every legal question related to public bargaining also involves a question of statewide concern requiring this Court's exercise of original jurisdiction. On the other hand, we have exercised original jurisdiction in public bargaining controversies involving a city's power to take certain acts on an issue of public concern. *Fraternal Order of Police Lodge No. 165 v. City of Choctaw*, 1996 OK 78, 933 P.2d 261, 265–268; *Stone v. Johnson*, 1984 OK 76, 690 P.2d 459, 463.

¶ 4 The issue in this controversy involves the power of municipality to create a collective bargaining relationship with some of its employees, and in my opinion, relies on overly broad language in a previous opinion of this Court. The issue has statewide significance, and I would thus assume original jurisdiction to address it. While I concur in assuming original jurisdiction *in this particular controversy*, most controversies involving a challenge to a decision of a municipal clerk, including those relating to collective bargaining, should be made using the statutory procedure of an appeal to a District Court, unless the parties show an inadequacy of that remedy and a need for speedy review.

*Keating v. Johnson*, 1996 OK 61, 918 P.2d 51, 55–56.

## II. The Proper Forum for an Appeal from the Decision of a Municipal Clerk

¶ 5 This proceeding may be divided into two parts for the purpose of analysis. The first is whether this proceeding should be in this Court. The second is the substantive issue of whether the proposed law is legislative or administrative in character. I first address the procedural problem.

¶ 6 This matter was filed as an appeal in this Court and converted to a request for extraordinary relief. Our previous order herein did not explain why this was done. We should now clarify for all municipalities across the State that protests of this nature are filed in the District Courts and not this Court.

¶ 7 In 1931 this Court reviewed an initiative petition to amend the charter of the City of Oklahoma City. *Ruth v. Peshek*, 1931 OK 674, 5 P.2d 108. Therein we followed an earlier opinion by this Court that also reviewed an initiative petition from the City of Oklahoma City. *Id.*, 5 P.2d at 110, *citing, Ruth v. Merrill*, 1914 OK 564, 144 P. 371. Both of these opinions explain that State procedural law and not a municipal charter provision is the proper authority for initiative petition protests. In short, a municipality lacks the authority to select whether the Supreme Court or a District Court will have jurisdiction over initiative petition appeals from the clerk of that municipality. In *Ruth v. Peshek, supra*, we said that:

> The city charter of Oklahoma City does not provide a method of appeal in such cases as the case at bar, and, even if it did, the state law providing procedure in such cases and fixing the jurisdiction thereof on appeal would be controlling.

> This court in the case of *Ruth et al. v. Merrill*, 43 Okl. 764, at page 765 and 766, 144 P. 371 of the Oklahoma Report (43 Okla. 764, 144 P. 371), said:

> "But let that be as it may, the district court was without jurisdiction to pass on

the sufficiency of the petition, and for that reason did not err in dismissing the appeal.

In support of the contention that the court was vested with jurisdiction to entertain said appeal, petitioner says that, although the act of March 17, 1910 (Laws 1910, c. 66), in effect repealed that part of section 6 of the act approved April 16, 1908 (Laws 1907–08, c. 44, art. 1), which vested the district court with jurisdiction to entertain appeals from the action of the city clerk in all cases where the initiative or referendum is invoked upon matters of purely municipal concern, yet he says that, as said section was incorporated in the city charter, adopted March 8, 1911, the effect of the adoption was to vest the district court with jurisdiction to entertain this appeal. **There is no merit in this contention, for the reason that the jurisdiction of the courts of this state is fixed by the lawmaking power of the state and not by the lawmaking power of any municipality therein.** It goes without saying that when the Legislature authorized the people of this municipality to adopt a charter and legislate therein upon matters of purely local and municipal concern, it did not intend to, and could not, vest the municipality with power to legislate with respect to state government."

*Ruth v. Peshek,* 5 P.2d at 110, *quoting, Ruth v. Merrill,* at 371–372. (emphasis added).

The former statutes allowed for an appeal to the Supreme Court, but they were repealed and replaced with statutes providing for an appeal to a District Court. See *Fite v. Lacey,* 1984 OK 83, 691 P.2d 901, 903–904, and the discussion of both the repealed statutes and 11 O.S.1981 § 15–104 providing for an appeal to District Court.

¶ 8 In *Fite* we said that:

Title 34, would therefore, determine the procedure for municipal initiative and referendum petitions *unless the city charter contained a controlling provision,* or if not, unless 11 O.S. §§ 15–101 through 15–110 contained a specific provision. The Muskogee city charter contains a single section which provides only that the procedure shall be in conformance with the Constitution and state laws. A specific procedure for filing a "protest to the petition or the count of signatures" is found in 11 O.S. § 15–104B, quoted above.

*Fite,* 691 P.2d at 904, (emphasis added).

We did say that a city charter provision would control over Title 34, but such was not the case in *Fite,* and we did not explain our previous cases such as *Ruth v. Peshek, supra,* and *Ruth v. Merrill, supra,* that clearly hold otherwise. A conflict exists between a state enactment and a municipal charter or ordinance when both contain either express or implied provisions that are inconsistent or irreconcilable with one another. *Simpson v. Dixon,* 1993 OK 71, 853 P.2d 176, 182. Oklahoma's City's charter provision allowing for an appeal directly to the Supreme Court conflicts with the language in § 15–104 stating that a protest is filed in, and heard by, a District Court. 11 O.S.2001 § 15–104.[1] In this case the statute trumps the charter.

¶ 9 In *Ryan v. Roach Drug Co.,* 1925 OK 611, 239 P. 912, 915, we said that:

We therefore conclude that the subjects of taxation, *the jurisdiction of the courts, and*

---

1. 11 O.S.2001 § 15–104.

§ 15–104. Publication announcing the filing of petition—Protests

A. When signed copies of a petition are timely filed with the clerk, the clerk shall make a physical count of the number of signatures appearing on the petitions. He shall then publish, in at least one (1) newspaper of general circulation in the municipality, a notice of the filing and the apparent sufficiency or insufficiency of the petition. The notice shall also state that any qualified elector of the municipality may file a protest to the petition or an objection to the count made by the clerk.

B. A protest to the petition or the count of signatures shall be filed in the district court in the county in which the situs of the municipality is located within ten (10) days after the publication. Written notice of the protest shall be served upon the clerk and the parties who filed the petition. In the case of the filing of an objection to the count, notice shall also be served upon any party filing a protest. The district court shall fix a day, not less than ten (10) days after the filing of a protest, to hear testimony and arguments for and against the sufficiency of the petition. A protest filed by anyone, if abandoned by the party filing it, may be revived within five (5) days by any other qualified elector. After the hearing, the district court shall decide whether such petition is in form required by law.

*the regulation of the practice and procedure of the courts of this state are matters of general public concern in which the sovereign, the state, has an interest, and that these subjects are subject to control and regulation by the state by general laws.*

Ryan v. Roach Drug Co., 239 P. at 915, quoting, *City of Sapulpa v. Land*, 1924 OK 92, 223 P. 640, (emphasis added).

In *City of Sapulpa* we said:

The judicial power here conferred by the Constitution is the power to hear and determine those matters which affect the life, liberty, or property of the citizens of the state as distinguished from ministerial power or authority, and the judicial power vested in the courts to determine such controversy must find the source of its authority in the supreme sovereign, which is the state. The Constitution of this state confides the judicial power to no court except those organized under the sanction and regulation of state law. *This power cannot be delegated to cities, and such municipalities cannot confer any jurisdiction upon such courts in any class of cases.*

*City of Sapulpa v. Land*, 223 P. at 644–645, emphasis added.

To put it simply, a municipality has no power to vest power in state courts to hear certain controversies. This conclusion is consistent with our recent opinion explaining that 11 O.S. § 15–104 is the exclusive procedure for testing the sufficiency of a recall petition. *Clapsaddle v. Blevins*, 1998 OK 5, ¶ 14, 66 P.3d 352, 357. Further, we have said that a city charter must give way to a matter of statewide interest. *Fraternal Order of Police Lodge No. 165 v. City of Choctaw*, 1996 OK 78, 933 P.2d 261, 266. *See Matter of Referendum Petition Filed with City Clerk of Norman on January 31, 1980*, 1980 OK 61, 610 P.2d 243, 245, *citing*, Merrill, *Constitutional Home Rule for Cities Oklahoma Version*, 5 Okla.L.Rev. 139, 169 (1952), (annexation is a "wider public interest" so as to require provisions of the charter of a "Home Rule" city to yield to state law). The power to vest jurisdiction in state courts is a state interest. *Ryan v. Roach Drug Co., supra,*

*City of Sapulpa v. Land, supra.* The District Court is the proper forum to hear an appeal from the decision of a municipal clerk, 11 O.S.2001 § 15–104, unless a petitioner can show that this Court should exercise a concurrent original jurisdiction.

### III. Legislative and Administrative Municipal Powers

¶ 10 May the People of any municipality require the governing body of the municipality to employ its employees in a manner that includes collective bargaining agreements? In the past we have distinguished between the exercise of legislative and administrative power, with the former being a proper exercise of power via the initiative process and the latter an improper exercise:

The constitutional reservation of power to the citizenry of municipal corporations, Const. Art. 18–21–4(a), encompasses all municipal legislative power but does not encompass administrative power. In *Yarbrough v. Donaldson*, 67 Okl. 318, 170 P. 1165 (1918), this court refused to require the application of the referendum process to a resolution of the city council approving the sale of the city's electric light plant authorized by statute. Syllabus by the court states in part:

' * * * such action is not legislative, but administrative action involving administrative discretion and not within the referendum powers reserved to the people of municipalities * * *.'

*In re Supreme Court Adjudication of Initiative Petitions in Norman, Oklahoma Numbered 74–1 and 74–2*, 1975 OK 36, 534 P.2d 3, 7.

How does the Court determine whether a particular exercise of power is administrative or legislative?

¶ 11 Public duties (or governmental functions) were identified with the exercise of legislative power, and distinguished from business and administrative (private) functions. For example, we said that: "Municipal corporations in operating a water plant exercise business and administrative functions, rather than those strictly governmental in their nature, and in the exercise of such

functions are governed largely by the same rules applicable to individuals or private corporations engaged in the same business," *Moomaw v. Sions,* 1923 OK 481, 220 P. 865, 867, *quoting, Fretz v. City of Edmond,* 1916 OK 516, 168 P. 800. *Moomaw* further described this dualistic view of municipal power thusly:

> A city has two classes of powers, the one legislative, public, governmental, in the exercise of which it is a sovereignty and governs its people; the other, proprietary, quasi private, conferred upon it, not for the purpose of governing its people, but for the private advantage of the inhabitants of the city and of the city itself as a legal personality.

*Moomaw,* 220 P. at 867, *quoting, Illinois Trust & Savings Bank v. City of Arkansas City,* 76 F. 271, 22 C.C.A. 171, 34 L.R.A. 518 (8th Cir.1896).

One question in *Moomaw* involved the contractual powers of a board of trustees of an incorporated town as such related to that city's operation of a facility for generating electricity, and we said that: "The authority given the municipality to undertake the operation of a business enterprise necessarily carries with it the authority to deal with the same in the same manner that private corporations would deal with its property, subject only to constitutional and legislative restrictions." *Moomaw,* 220 P. at 867. Opinions such as *In re Supreme Court Adjudication of Initiative Petitions in Norman, Yarbrough,* and *Moomaw* do support defining the exercise of administrative power so as to include all aspects of a municipality's employer/employee relationships that are not otherwise specifically controlled by statutory or constitutional law.

¶ 12 Some opinions, such as *Fite v. Lacey,* 1984 OK 83, 691 P.2d 901, rely, in part, upon the underlying philosophy found in *Moomaw,* and define administrative power as that exercised to address a temporary condition. In *Fite* we said that:

> This court has repeatedly held that the constitutionally reserved powers of initiative and referendum apply only to legislative matters and not to administrative acts. Okl. Const. Art. 18, § 4(a) provides:

> The powers of the initiative and referendum, reserved by this Constitution to the people of the State and the respective counties and districts therein, are hereby reserved to the people of every municipal corporation now existing or which shall hereafter be created within this State, with reference to all legislative authority which it may exercise, and amendments to charters for its own government in accordance with the provisions of this Constitution.

In *Brazell v. Zeigler,* 26 Okl. 826, 110 P. 1052 (1910), this court stated that acts which are subject to the initiative and referendum powers "must be considered in the sense of general laws, namely rules of civil conduct prescribed by the lawmaking power and of general application ... the law is said to be a rule, not a transient, sudden order to and concerning a particular person, but something permanent, uniform and universal."

The distinction between subjects of a temporary nature and those of a permanent character is also discussed in McQuillin, Municipal Corporations, § 1655 (3rd ed.1981). A pertinent portion of that discussion provides:

> Actions relating to subjects of a permanent and general character are generally regarded as legislative, and those providing for subjects of a temporary and special character are regarded as administrative ... Obviously, details which are essentially of a fluctuating sort, due to economic or other conditions, cannot be set up in and by an Ordinance to be submitted to the vote of the people.

Collective bargaining with compulsory binding arbitration is a tool of personnel management which involves the consideration of a number of factors which are subject to change. Variable economic conditions, distribution of work force and a number of ever-changing factors which effect the work environment must be taken into consideration. Periodic re-examination of established policies is necessary for effective personnel management. Such a process cannot logically be said to be of a permanent character. Due to this lack of permanence, it is more properly character-

ized as an administrative function of elected officials.

*Fite v. Lacey*, 691 P.2d at 904–905.

Thus, *Fite* defines administrative acts as transient in nature and affecting particular people, as opposed to legislative acts that are "general laws" and "rules of civil conduct" that are "of general application."

¶ 13 Historically, courts identified legislative and administrative powers with governmental and private powers, *e.g.*, the common-law distinction between public wrongs (or public duties) and private wrongs (or private duties). A "private wrong"[2] springs from a breached duty owed to a particular individual as opposed to the public at large, and thus, a city's duty to provide a safe working environment for its employee was said to be private, and springing from the private contractual relationship with its employees as opposed to any duty to the citizenry at large. *Rhobidas v. City of Concord*, 70 N.H. 90, 47 A. 82, 87 (1900). *Fite's* conclusion that collective bargaining is an administrative function is consistent with the common-law distinction.

¶ 14 But this Court is not bound to blind adherence to every rule of common law. A universal and literal application of *Fite* would also necessarily mean that the People residing in a particular municipality would not have the power to legislate with regard to any subject relating to that municipality's employment contracts unless specifically authorized by some authority that supercedes municipal authority, *e.g.*, when specifically allowed by state statute or constitution. This view fails to incorporate the more modern view expressed by many courts that the nature of a municipality's employer/employee *contractual* relationship with its employees does involve an exercise of governmental power.

¶ 15 Employees of governmental entities may possess, as employees, certain liberty and property interests protected by the Due Process Clause. *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir.1998). One source for these protected rights may be the *contractual* obligations and rights of the par-

ties. For example, this Court recently reviewed an allegation of a procedural due process violation in the context of a municipal employment contract which limited an employer's discretion, and gave an employee a legitimate expectation of continued employment in a certain capacity. *Barnthouse v. City of Edmond*, 2003 OK 42, ¶¶ 13–14, 73 P.3d 840, 847. This case involved a contract that was a collective bargaining agreement, but this fact is not the critical one. The *form* of the contract as a collective bargaining agreement did not create the protected interest; rather, it was its substance, *i.e.*, the fact that the employer's discretion was limited and the employee's expectation was created by a contract or agreement made by the parties.

¶ 16 When explaining *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Tenth Circuit court said that: "The Court explained that legitimate claims of entitlement arose from independent sources such as state law, rules, *or understandings that secure benefits to an employee.*" *Asbill v. Housing Authority of Choctaw Nation of Oklahoma*, 726 F.2d 1499, 1501–1502 (10th Cir.1984), (emphasis added). For example, we applied *Asbill* in *Blanton v. Housing Authority of City of Norman*, 1990 OK 38, 794 P.2d 412, 414–415, where we explained that Blanton's evidence was insufficient to show that his employment contract contained a substantive restriction on the Authority's power to discharge him from employment.

¶ 17 It is certainly true that not every provision of a public contract gives rise to a corresponding constitutional interest. But the illustrative importance of these Due Process opinions to the case today is simply this: a municipal employment contract is no longer considered to be *merely* a private business activity between the contracting parties. Such contracts are no longer considered to involve matters outside the scope of an exercise of governmental power. The case today is not about personnel decisions with regard to specific employees. Instead, the issue is the policy controlling the general nature of

---

**2.** For a discussion of private wrongs and public wrongs see *Cummings v. Board of Education*, 1942 OK 154, 125 P.2d 989, 994 and 3 W. Blackstone, *Commentaries*, * 2.

employment contracts a city should have with its employees—if approved by the People.

¶ 18 One of the ironies in this controversy is that a municipality is claiming that it, in an administrative capacity, has authority, to the exclusion of the expressed will of the People, to determine if the municipality should create collective bargaining employment contracts, with the contemporaneous creation of expectation (or Due Process) interests. In other words, the city claims that it should, as an administrative matter, determine to what extent constitutional rights are created by its contracts, and the People should not have the ability to vote on this issue. I must conclude that The People do possess an interest in determining the policy and the general nature of how a city contracts with its employees, and whether constitutionally protected property and liberty interests are thereby created. I would thus issue mandamus and require the clerk to proceed without invalidating the petition by reason of its substance.