**In the Matter of the Protest of the REF-ERENDUM PETITION FILED WITH the CITY CLERK OF NORMAN ON JANUARY 31, 1980.**

**Russell L. BATES, Jr. and Fred S. Goddard, Appellants,**

v.

**Marvin BAKER, June Benson, Oliver Benson and 2,589 Citizens of Norman who Signed the Petition, Appellees.**

No. 54892.

Supreme Court of Oklahoma.

April 15, 1980.

---

Luttrell, Pendarvis & Rawlinson, Norman, for appellants.

Harriet H. Harding, Norman, June E. Tyhurst, Louis W. Bullock, Tulsa, for appellees Baker, Benson and others.

Oliver Benson, pro se.

IRWIN, Vice Chief Justice.

On January 2, 1980, the City Council of Norman approved an ordinance which deannexed an area of land in the northern part of Norman. On January 31, 1980, appellees filed a signed referendum petition to present the question of deannexation to the vote of the people. On February 1, 1980, the City Clerk upheld the sufficiency of the petition, and on February 12th appellants filed their protest to the Petition. A hearing was conducted, and on March 3, Judge Wilson denied appellants' protest. Appellants appealed.

The City of Norman does not provide by ordinance or charter for the manner of exercising initiative and referendum powers, and the parties agree that 11 O.S.1979 Supp. §§ 15–101, *et seq.* adopted in 1977, which became effective July 1, 1978, are applicable in these proceedings.

Appellants first contend that the petitions are insufficient because they seek to refer to a vote of the people a decision made on an administrative rather than a legislative matter. This court has previously recognized that the initiative and referendum power reserved to the people by our Constitution extends only to those matters which may be characterized as "legislative," and that acts which are "administrative" are not subject to the petition process. *In Re Referendum Petition No. 1968–1 of City of Norman,* Okl., 475 P.2d 381 (1970). Appellants contend that deannexation of land is an administrative function, while appellees contend it is legislative.

Appellees cite *City of Bethany v. District Court of Oklahoma County,* 200 Okl. 49, 191 P.2d 187 (1948) as holding the deannexation to be "legislative". In *City of Bethany* we said:

"The annexation of territory by a municipality is a legislative function, bestowed upon municipalities and granted to them by a proper delegation of power and authority from the supreme legislative department of the State."

See also *Botsford v. City of Norman*, 354 F.2d 491 (10th Cir., 1965) which contained comparable language.

A review of the above cases discloses that any characterization of annexation as being a legislative function was made in the context of differentiating between what is a "judicial" function and a "legislative" function. Whether or not annexation matters were "legislative" as distinguished from "administrative" was not in issue. Matters which may have been determined to be "legislative" in the context of the issues presented in the above cases are not necessarily "legislative" in the context of the issues presented here.

In *In Re Supreme Court Adjudication, etc.*, Okl., 597 P.2d 1208 (1979) we held that an initiative petition directed to fixing rates to be paid for services provided by a municipal police force did not deal with a legislative matter, but involved administrative discretion and therefore was not reserved to the people of a municipality by the power of initiative and referendum. We reiterated the holding that "[t]he reserved powers of initiative and referendum guaranteed under the Okl.Const., Art. 18 § 4(c) refer to municipal legislation or general laws only; that is, rules of civil conduct of general application throughout the municipality as prescribed by the law-making power of such municipality." McQuillan, Municipal Corporations, § 16.55 states:

> "The power to be exercised is legislative in its nature if it prescribes a new policy or plan; whereas, it is administrative in its nature if it merely pursues a plan already adopted by the legislative body itself, or some power superior to it."

In *Brazell v. Zeigler*, 26 Okl. 826, 110 P. 1052 (1910) we said that acts which are subject to referendum "must be considered in the sense of general laws, namely, rules of civil conduct prescribed by the lawmaking power and of general application . . the law is said to be a rule, not a transient, sudden order to and concerning a particular person, but something permanent, uniform, and universal."

Appellants argue that the deannexation ordinance was administrative since it carried into effect a plan under 11 O.S.1979 Supp., § 21·101, which authorizes a municipal governing body to increase or diminish its corporate limits. Under such construction, i. e., that the city council was merely "administering" a law already enacted by the legislature, virtually no act of a city which is not "Home Rule" would be subject to initiative or referendum, because such cities derive their power from authority granted by the legislature. This would be in direct conflict with 11 O.S.1979 Supp., § 15–101, which provides that the powers of initiative and referendum, reserved by the Oklahoma Constitution to the people, are reserved to the people of every municipal corporation with reference to all legislation which it may exercise. But, assuming *arguendo* that a municipal governing body could constitutionally deprive the electors of a municipality of the right of referendum in reference to annexation, the charter of the City of Norman does not do so.

Annexation has been said to be of such "wider public interest" so as to require provisions of the charter of a "Home Rule" city to yield to state law. See Merrill, Constitutional Home Rule for Cities Oklahoma Version, 5 Okla.L.Rev. 139, 169 (1952). Appellants tacitly recognize this but attempt to use it to buttress their argument that the action in question was administrative. They argue the present case falls within the purview of McQuillan, *supra*, § 16.55 which states:

> "If the subject is one of statewide concern in which the legislature has delegated decision-making power, not to the local electors, but to the local council or board as the state's designated agent for local implementation of state policy, the action receives an 'administrative' characterization, hence is outside the scope of the initiative and referendum."

They say the state statute governing annexation and deannexation gives the power to the "municipal governing body", thus making the council in this case the "state's" agent for implementation of annexation policy. No such policy appears in the stat-

ute, nor may its reference to the "governing body" be construed as granting annexation power to only the "governing body." Elsewhere in the Municipal Code the governmental powers of the city are vested in the "governing body" but it may not seriously be argued that the legislature intended to remove all such powers from the initiative and referendum power.

Unquestionably, the addition or deletion of land from the corporate boundaries of a municipality has an impact on the entire community, as opposed to only the individuals directly involved. However, the same may be said of salaries of police officers, and this factor alone does not dictate a result here. An alteration in the boundaries of a municipality effects a permanent change. It is no transient decision upon which it is vital that the governing body be able to act without delay in order to insure maximum efficiency. Moreover, it involves the establishment of a fundamental policy for a municipality, the territorial limits of its jurisdiction. It may be said that removing the city's territorial sovereignty from the deannexed land in question enacts "a rule of civil conduct of general application" for it plainly destroys the rights of citizens of the city to control matters relating to that land through their elected representatives in municipal government. We are satisfied that it sufficiently relates to the setting of such rules and policy so as to subject it to review by referendum, and the "statewide" interest which annexation policies occupy supports our conclusions.

Appellants also contend that the number of signatures on the petition is insufficient to meet the requirements of § 15–103. That section requires the petition bear the signatures of registered voters residing in the municipality equal to "at least twenty-five percent (25%) of the total number of votes cast at the preceding general election." The last three words "preceding general election" create the issue in this case.

Appellants contend that the "preceding general election" in the case at bar is the state-wide general election held in November, 1978. Under the evidence presented, if such election is the measuring stick the petition must fail. On the other hand, appellees contend, and the trial court evidently determined, that the "preceding general election" was an election held in March, 1977, denominated by the city charter as a "primary election."

■ Prior to the adoption of the current version of the Municipal Code, the law was well established that municipal petitions were to be measured by the votes cast at the most recent municipal election at which all citizens of the city, and only citizens of the city, had an opportunity to vote. *In Re Initiative Petition No. 1, City of Drumright*, Okl., 298 P.2d 409 (1956); *Belisle v. Crist*, Okl., 425 P.2d 983 (1967). Appellants contend that the legislature intended to modify that law by the language used in the present statute. An examination of the prior law and the present section does not support that approach. In *Drumright, supra*, the court interpreted the language of 11 O.S.1951, § 561, which provided that the formula be based upon "the total number of votes [cast] at the last general or special election held in such municipality." The court determined that the phrase "general election" did not include a state-wide general election, despite the fact that the election had been held "in" the municipality. In so ruling the court noted:

"Subsequent legislation, section 561, supra, which prescribes a procedure in the exercise of initiative provides the signers of the petition in number must equal twenty-five percent of the total number of votes 'at the last general or special election held in such municipality.' The subject matter of these provisions pertains exclusively to municipal government, and we hold the references therein to elections is to municipal elections and does not include such elections held in the municipality wherein electors residing outside the city or town may vote."

Thus, in *Drumright* we construed virtually identical language and found it did not include an election in which voters other than resident-electors of the municipality

could participate. As suggested by appellant, we may assume that the legislature was familiar with the previous construction placed on this language by the court, and we can not sustain the contention that the legislature intended to alter the law by using almost identical language.

■ However, appellants contend the election used by the clerk to determine sufficiency cannot be the election prescribed by the statute since it is denominated by the city charter as a "primary" election. Under Norman's charter there are no "primaries" as that term is generally used in the election statutes. No political party participation is allowed in the election of city officers. The election denominated a "primary" is actually an election at which all voters entitled to vote in municipal elections may participate and potentially elect city-wide officials without the intervention of what is denominated a "general" election. This is because in the "primary", rather than a nominee from each party being selected to run in the "general" election, two candidates, from among several, are selected for a final vote in the "general" election. However, in the event one of the candidates receives a majority of the vote at the "primary", that candidate is declared to be elected, and there is no "general" election as to that office.

The municipal election scheme found in 11 O.S.1979 Supp., § 16–101 et seq., not applicable to charter cities such as Norman, presupposes the participation of political parties, and the definition provided therein may not be used to determine whether the election in question here actually qualifies as the "preceding general election." Just as the court in Belisle v. Crist, supra, was not bound to find that a "general" election under a similar scheme was in fact a "general" election for purposes of initiative and referendum petitions, so we are not bound to find that an election called a "primary" cannot be a "general" election within the terms of the statute.

Appellants rely upon State v. Carter, 177 Okl. 382, 59 P.2d 948 (1936), and argue that it "distinguished a primary from a general election". In that case the court had to determine whether a state-wide run-off primary election qualified as the "next election held throughout the State." The court determined that a primary did not qualify because it was no "election" at all, merely a partisan nominating process. As we understand appellants' argument, they contend that Carter provides a basis for determining what is a "general election." Under that case, the principal distinguishing feature between a "primary" and what appellants contend is a "general" election, is that in the latter all of the affected voters have an opportunity to select public officials and may actually select the officeholders. Under the test which the appellants themselves urge the March, 1977, election qualifies as a "general election."

■ We hold that the phrase "preceding general election", as used in 11 O.S.1979 Supp., § 15-103, may include regularly scheduled municipal elections at which all citizens have the opportunity to elect the officers of the city, whether such election be denominated a "primary" or "general" election, so long as such "primary" does not constitute merely a partisan nominating procedure as contemplated by other provisions of our election laws.

Affirmed.

All the Justices concur.