2008 OK 61

Melissa NEIDY, Freddie Ballard and Joseph D. Wood, Proponents/Appellants

v.

CITY OF CHICKASHA, Thomas Cook, Steve Laforge, Donna Day, Eleanor Edmondson, Terry Howell, Mickey Garrison and Sandra Johnson, Protestants/Appellees.

No. 103,690.

Supreme Court of Oklahoma.

June 24, 2008.

Donald P. Ferguson, Ferguson & Heck, Chickasha, OK, for Proponents/Appellants.

Tom Frailey & Deborah A. Sterkel, Frailey, Chafin, Cordell, Perryman, Sterkel & McCalla, LLP, Chickasha, OK, for Appellee City of Chickasha.

Phil W. Gordon, Hays & Gordon, PLLC, Chickasha, OK, for Appellees Cook, LaForge, Edmondson, Howell, Garrison and Johnson.[1]

OPALA, J.

¶ 1 The issue tendered on certiorari is whether the Court of Civil Appeals (COCA) erred as a matter of law when it affirmed the trial court's decision that Melissa Neidy, Freddie Ballard and Joseph D. Wood (Proponents) did not gather a sufficient number of signatures to support the referendum petition. We hold that the March 2005 election must be used to determine the number of signatures needed for the referendum petition in suit.

## I

### ANATOMY OF LITIGATION

¶ 2 On 8 March 2005 (March 2005 election) the City of Chickasha (the City) held a **general** municipal election in which its council members of three wards were chosen.[2] In this election 512 votes were cast. On 8 November 2005 (November 2005 election) the City held a **special** municipal election in which citizens voted on a proposed quarter-cent sales tax. In this election 2,207 votes were cast. On 21 November 2005 the Chickasha City Council passed Ordinance No.2005–17 which established a tax increment financing district (TIF).Within the city the TIF was established under the provisions of the Local Development Act, 62 O.S.2001 § 850 et seq. On 23 November 2005 the Proponents filed Referendum Petition

---

1. Identified herein are only those counsel for the parties whose names appear on briefs or other material submitted on certiorari.

2. Despite the fact that this number is lower than the total number of City Council Members, it was an election in which all citizens of the City were eligible to vote and only the citizens of the City were eligible to vote.

No.2005–1RP (Petition) with the Chickasha City Clerk (city clerk). In the Petition, Proponents sought an election by the qualified voters of the City for approval of the TIF. On 16 December 2005 Proponents timely filed with the city clerk signed copies of the Petition containing 279 signatures. On 21 December 2005 the same Petition was filed with five additional signatures. With all signatures considered, the Petition contained 284 signatures.

¶3 The city clerk determined that 239 signatures were valid, but ruled that the number of signatures was insufficient based upon the number of votes cast in the November 2005 election. Based on the latter election the Petition, to be valid, would have needed 552 signatures (this number is equal to twenty-five percent of the total votes cast in the November 2005 election). Notice of the Petition's insufficiency was then published in the 8 January 2006 edition of the Express–Star.[3]

¶4 On 13 January 2006 Melissa Neidy and Freddie Ballard[4] filed in the District Court of Grady County, a notice of objection to the city clerk's count of signatures concerning the Petition. In this notice the Proponents formally acknowledged their objection to the city clerk's signature count.

¶5 In response to the notice of objection, Thomas Cook, Donna Day,[5] Eleanor Edmondson, Mickey Garrison, Terry Howell, Sandra Johnson, and Steve LaForge (Protestants) filed on 17 January 2006 a protest to the Petition. The protest alleged that the Petition was facially invalid because it failed to secure a sufficient number of signatures by qualified electors as required by the Oklahoma Constitution.[6] Naming the Proponents as the opposing party, Protestants sought judicial declaration that the Proponents' request for an election upon their Petition be denied.

¶6 On 1 February 2006 Proponents brought a petition in error and notice of appeal against the City of Chickasha in the District Court of Grady County. The petition challenged the ruling of the city clerk that there was not a sufficient number of signatures on the Petition to make it valid. The issue in this appeal was which election was correct for determining the needed number of signatures for the Petition. Proponents emphasized that if the March 2005 election were correctly chosen, there would have been enough signatures on the Petition.

¶7 On 2 March 2006 the City of Chickasha moved the trial court to consolidate the two cases. Finding that the two actions presented a common question of law, the trial court consolidated the cases to avoid undue expense or delay.

¶8 All parties filed on 1 May 2006 countermotions for summary judgment with supporting briefs. The City's motion for sum-

---

3. The Express–Star is a newspaper that is published in Chickasha whose circulation covers Chickasha and Grady County. The Notice of Filing of Referendum Petition that appeared in the paper provides:
    NOTICE IS HEREBY GIVEN that on 21st day of December, 2005, a Petition was filed with the City Clerk for the City of Chickasha, in an action entitled Referendum Petition No.2005–1RP. The petition, with accompanying signatures, demands that the City of Chickasha Ordinance No.2005–17, approving a tax increment financing district, be submitted to an election by the qualified voters of Chickasha, Oklahoma.
    NOTICE IS HEREBY GIVEN that upon examining the petition and accompanying signatures, the City Clerk for the City of Chickasha has determined said petition to be apparently insufficient. Any qualified elector if the Chickasha, Oklahoma desiring to protest the petition or the count of signatures made by the clerk may file a written protest in the District

Court of Grady County within ten (10) days from the date of this publication. Written notice of any protest shall be served upon the City Clerk for the City of Chickasha and upon the partied who filed the petition.

4. Joseph D. Woods was added as a Proponent to the case on 18 January 2006 in an amended objection to count of signatures on Referendum Petition No.2005–1RP. In the amended objection Proponents not only objected to the determination by the city clerk of the number of signatures required to make the Petition sufficient but also to the determination that certain signatures were not proper and thus were not counted.

5. Protestant Donna Day did not participate in the Protestants' motion for summary judgment or in the response to proponents' motion for summary judgment in the trial court.

6. *See* discussion *infra* Part II.A. and note 10.

mary judgment asserted that the Proponents failed to obtain a sufficient number of signatures to support the Petition based on the November 2005 election. The City argued the November 2005 election was the correct criterion because it was the next preceding election where all voters had the opportunity to vote. In the Proponents' motion for summary judgment they asserted that the Petition possessed a sufficient number of signatures based on the March 2005 election. The Proponents asserted that the March 2005 election was correctly to be applied for determining the number of signatures because it was the last general election before the filing of the Petition.

¶ 9 The trial court gave summary judgment to Protestants. According to the trial court, the provisions of the Oklahoma Constitution require that every referendum petition bear a total number of signatures that is equal to twenty-five percent (25%) of the total number of votes cast at the next preceding election.[7] The trial court also found that the terms of 62 O.S.2001 § 868(B)(2) mandate that every referendum petition, to be sufficient, shall be signed by a number of registered voters residing in the city that is equal to at least twenty-five percent of the total number of votes cast at the last preceding general municipal election.[8] Moreover the trial court used the court's holding in *In re Protest of the Referendum Petition filed with the City Clerk of Norman*[9] to reach the conclusion that "next preceding election" means the most recent municipal election at which all citizens of the city (and only citizens of the city) had an opportunity to vote. Using these sources the trial court found that the "next preceding election" last before the filing of the Petition was the November 2005 vote. In sum, the trial court ruled that the city clerk was correct in determining that Proponents failed to provide the needed 552 signatures of registered voters to support the Petition.

¶ 10 COCA affirmed the trial court's summary judgment without giving an in-depth analysis of its own for the issue at hand. According to COCA, the trial court's explanation for its conclusion was comprehensive and well reasoned.

## II

### A FRAMEWORK FOR DETERMINING WHICH ELECTION CONTROLS THE PETITION'S SUFFICIENCY

¶ 11 The sole issue before us is whether the general municipal election held in the City of Chickasha in March 2005 to elect three city councilmen or the special municipal election held in November 2005 to determine the increase in sales tax legally qualifies as the election for determining the needed number of signatures for the referendum petition at issue here.

### A

#### Governing Constitutional Provisions

¶ 12 Article 18, § 4(b), Okl. Const., provides the basic authority for the municipal referendum petition. Pursuant to that provision,

> [e]very petition for either the initiative or referendum in the government of a municipal corporation shall be signed by a number of qualified electors residing within the territorial limits of such municipal corporation, equal to twenty-five per centum of the total number of votes cast at the next preceding election, and every such petition shall be filed with the chief executive officer of such municipal corporation.[10]

This constitutional provision utilizes the phrase "next preceding election," which does

---

7. OK Const. art. 18, § 4(b).

8. The terms of 62 O.S.2001 § 868(B)(2), provide: [e]very petition for either the initiative or referendum shall be signed by a number of the registered voters residing in the city or town equal to at least twenty-five percent (25%) of the total number of votes cast at the preceding general municipal election or for counties, equal to at least ten percent (10%) of the registered voters residing in the county. The signatures to each petition shall be verified in the manner provided by law.

9. *In re Protest of the Referendum Petition filed with the City Clerk of Norman on January 31, 1980*, 1980 OK 61, 610 P.2d 243.

10. *See supra* note 7.

not by itself provide clear guidance for settling the precise meaning of the term. It is the legislature and this court who have provided the additional clarification for this term. We must now decide whether the critical election declared by COCA does qualify as the "next preceding election."

### B
### Statutory Provisions

¶ 13 According to the terms of 11 O.S.2001 § 15–101, "[t]he powers of initiative and referendum, reserved by the Oklahoma Constitution to the people, are reserved to the people of every municipal corporation with reference to all legislative authority which it may exercise and amendments to municipal charters." The following sections of Title 11 set forth procedures for an initiative and referendum proceedings within a municipality.[11] The terms of 11 O.S.2001 § 15–103(B) specify the number of signatures required for an initiative or for a referendum petition. The terms of 11 O.S.2001 § 15–103(B) provide:

> [e]very petition for either the initiative or referendum shall be signed by a number of the registered voters residing in the municipality equal to at least twenty-five percent (25%) of the total number of votes cast at the preceding general election or biennial town meeting if the municipality is subject to the Oklahoma Town Meeting Act.[12]

¶ 14 The legislature has chosen to make the powers of initiative and referendum applicable to incentive or increment districts under the provisions of the Local Development Act, 62 O.S.2001 § 850 et seq. Within the text of this Act the legislature provided that a referendum petition shall be signed by that number of registered voters residing in the city which is equal to at least twenty-five percent of the total number of votes cast at the preceding general municipal election.[13]

### C
### Extant Jurisprudence of Pertinence

¶ 15 While the legislature used language that is different from that employed in the Oklahoma Constitution, this court has reconciled the two versions on several occasions. It has consistently adhered to the view that the phrase "next preceding election" found in the Constitution of Oklahoma refers to **the next preceding general municipal election.**

### i

### A general municipal election stands recognized by precedent as determining the number of signatures that is sufficient for a referendum petition

■ ¶ 16 The question before us—which election is to be used as a basis for an initiative or referendum petition—arose in 1956 in *In re Initiative Petition No. 1, City of Drumright.*[14] The issue there was whether the last general election, a state-wide election, or the last general municipal election ought to be the basis for determining the required number of signatures for a petition.[15] In this case the court held that pertinent provisions of Oklahoma Constitution and statutes refer only to municipal elections. They do not include those elections held in a municipality in which electors not residing within city limits may vote.[16]

---

**11.** The following sections in 11 O.S.2001 § 15 describe the various procedures for municipalities when they are faced with a referendum or an initiative petition. The provisions of 11 O.S.2001 § 15–102 describe the procedures that municipalities which are not under a City Charter need to follow, the terms of 11 O.S.2001 § 15–103 state the timing requirements for filing a referendum or initiative petition, and the provisions of 11 O.S.2001 § 15–104 detail the means by which notification of the petition is permissible. Sections that follow those enumerated above describe the means by which a municipality needs to prepare a ballot title for the petition and there are also procedures by which people can appeal

decisions regarding a referendum or initiative petition.

**12.** 11 O.S.2001 § 15–103(B).

**13.** *See supra* note 8.

**14.** *In re Initiative Petition No. 1, City of Drumright*, 1956 OK 175, 298 P.2d 409.

**15.** *Id.* at 410–11.

**16.** *Id.* at 414.

¶ 17 In the case at hand this was not an issue because both the March 2005 vote and that of November 2005 were cast at municipal elections. In both elections all citizens of the City and only citizens of the City could vote. *Drumright* **is important because it established the governing principle that the term election found in the Oklahoma Constitution refers solely to a municipal election.**

¶ 18 Proponents correctly rely on the teachings of *In re Initiative Petition No. 13 of Oklahoma City* to illustrate that the phrase "next preceding election" as used in the Oklahoma Constitution, actually means the next preceding general municipal election.[17] The issue in the last invoked case was which election determined the number of signatures sufficient for a municipal initiative petition.[18] The two elections there under consideration were a special franchise election and an earlier general municipal election.[19] Noting that the dispositive issue was which of the two elections would control, this court held that when Oklahoma City adopted Article 18, § 4(b) (of the Oklahoma Constitution) as part of its charter, the term "next preceding election" meant votes cast at the next preceding general municipal election.[20] In short, the court **refused to allow a special franchise election to determine the needed number of signatures for an initiative petition.**

■ ¶ 19 Protestants argue the phrase "next preceding election" can no longer be narrowly construed to mean the preceding general election. In support of that argument, Protestants emphasize that at the time *Initiative Petition No. 13* was decided, Oklahoma statutes included two chapters in Title 11 called "General Elections" and "Special Elections." While the specific section governing general elections, § 23b,[21] was in effect when *Initiative Petition No. 13* was decided, it was repealed in 1974.[22] Despite the fact that the repeal is shown in the statutes, the Charter of the City of Chickasha (charter) continues to retain a similar section in its own charter. While the charter does not call the annual elections "general elections," the procedure is analogous to that which was provided for by the Oklahoma statutes at the time when *Initiative Petition No. 13* was decided.[23]

¶ 20 While Protestants use the fact that the charter does not explicitly refer to a "general" election to illustrate the difference between the Oklahoma Statutes and the charter, this court must recognize that similar procedure is described in both documents. To faithfully **follow the precedent established in** *Initiative Petition No. 13,* the court must hold today that the term "next preceding election" refers to the **"next preceding general municipal election."**

¶ 21 As applied to the case at hand, *Initiative Petition No. 13* provides a clear precedential command that we must look to the March 2005 election instead of the November

17. *In re Initiative Petition No. 13 of Oklahoma City, Oklahoma,* 1962 OK 49, 369 P.2d 458, 460.

18. *See id.*

19. *Id.*

20. *Id.* at 460.

21. The terms of 11 O.S.1951 § 23(b) provided that:

> [g]eneral elections shall be held in all cities on the first Tuesday in April 1943, and each two (2)years thereafter, at which there shall be election for the city at large, one (1) mayor, one (1) city marshal, one (1) street commissioner, one (1) city clerk, and one (1) city treasurer; there shall also be election from each ward one (1) councilman. On the first Tuesday in April, 1944, and each two (2) years thereafter an election shall be held in all cities, at which time one (1) councilman shall be elected from each ward.

22. The 1974 Session Laws, Ch. 174, § 11 provide that "Sections 23b and 23d of Title 11, Oklahoma Statutes 1971, are hereby repealed."

23. The terms of the Charter of the City of Chickasha, art. 9, § 4 (1996) are:

> [o]n the second Tuesday in the month of March in each odd numbered years there shall be held an election for one (1) Council member from each ward who shall hold office for a term of two (2) years, and in each ward this Council position shall be known as Position 1. On the second Tuesday in the month of March of each even numbered year there shall be an election held for the election of one (1) Council member for each ward who shall hold office for a term of two years, and in each ward this Council position shall be known as Position 2.

2005 vote. As in *Initiative Petition No. 13*, there were two elections in Chickasha: the special election which immediately preceded the filing of the Petition and the general election which was held earlier that year. In *Initiative Petition No. 13* the court refused to use the special franchise election as a basis for determining the needed number of signatures for the referendum petition. In an effort to prevent proponents from speculating on the turnout of a special election to base their petitions, the court held that the number of required signatures must be based on the number of people who voted in **the next preceding general municipal election.** Accordingly, the court today may not apply the special election, the vote held November 2005, as the basis for determining the needed number of signatures. Instead, the court is commanded to use the next preceding general municipal election, that of March 2005, to determine the needed number of signatures.

¶ 22 The very same issue was revisited once again in *Shelton v. Lambert* where the court decided that the term "next preceding election," as it is employed in the Oklahoma Constitution, means the general municipal election next preceding the circulation and filing of a petition.[24] In the case at hand, the general municipal election that next preceded the circulation of the Petition here under consideration was that held in March 2005 instead of that which took place in November 2005.

24. *Shelton v. Lambert*, 1965 OK 28, 399 P.2d 467, 470.

25. *See supra* note 23.

26. The terms of the Charter of the City of Chickasha, art. 9, § 1 (1976) are, "[t]he election of all officers under this charter shall be non-partisan."

27. The terms of the Charter of the City of Chickasha, art. 9, § 2 (1991) are, "[e]ach ward of the City will continue to be represented by two Council members. Each Council member shall be a resident and elector of the respective ward for which he/she seeks election. The election of Mayor and Council members shall be by all the qualified voters of the City."

28. *See supra* note 23.

¶ 23 The March 2005 election was held to elect council members pursuant to the charter.[25] The election of all officials for the City is non-partisan[26] and all qualified voters of the City are entitled to vote in the March election.[27] While the charter does not define a "general election," its procedures clearly provide for a general election.[28] Moreover the charter outlines a separate procedure for special elections that is distinctly different from the that to be held for council members.[29] These special elections specify the only other form of a city vote besides that provided by the regular election which is authorized by the charter.

¶ 24 **Since the charter explicitly defines a "special election,"** this indicates that there was an intent by its framers for there to be a difference between a general and a special election. While a voting process for council members occurs annually in March, special elections happen only when the Mayor calls them for a particular purpose. Thus the November 2005 election was intended, and was in fact, a special election because it was a vote called by the Mayor for the specific purpose of approving the proposed quarter-cent sales tax. It was not the regularly scheduled March election but rather a special vote called for in accordance with the framework of the city charter. Since the November 2005 election was not a general municipal election, when measured by the criteria fashioned by the court in *Shelton v. Lambert*, it cannot serve as the basis for determining the needed number of signatures on the referendum petition.

29. The terms of the Charter of the City of Chickasha, art 9, § 8 (1976) are:

[a]ll special elections held in said City shall be upon the call of the Mayor, for any purpose, with the concurrence of the City Council with five (5) affirmative votes, and in accordance with the terms and provisions of the Constitution and the laws of the State of Oklahoma. Special elections provided for within this charter by the City Clerk shall follow all applicable provisions of State Law. The Clerk shall give a thirty (30) day public notice of election and provide three (3) day filing period ending ten (10) days prior to the election. Failure of the City Clerk to comply with the provisions of calling a special election shall be grounds for dismissal.

¶ 25 The court once again was compelled to examine a similar issue in *Belisle v. Crist*.[30] In *Belisle* the issue was which election was to control for determining the needed number of signatures on an initiative petition.[31] The court's holding in *Belisle* reaffirmed *Shelton* by stating that "next preceding election refers to a general municipal election." [32] In defining the term "general municipal election" the court looked to *Initiative Petition No. 13* and *Shelton*.[33] Both of the named pronouncements support the conclusion that a "general municipal election" means that which is the next preceding general municipal election before the filing of the referendum petition.

¶ 26 Using the criteria established in *Initiative Petition No. 13*, *Shelton*, and *Belisle* the court is compelled today to hold that the March 2005 election is that which determines the needed number of signatures for the Petition here at issue. It was a **general municipal election** while the November 2005 vote must be characterized as a special election that was called by the Mayor to address a city issue. **COCA was hence in error when it affirmed the trial court's ruling.**

ii

**The use of a special election to determine the sufficiency of signatures on a referendum petition offends the Oklahoma Constitution**

¶ 27 A more recent case in which the court was called upon to choose between elections to determine the needed number of signatures for a municipal petition is *In re Referendum Petition Filed with the City Clerk of*

*Norman on January 31, 1980*.[34] The issue there was which election may serve as the foundation for determining the needed number of signatures on a referendum petition.[35] In *Norman* the court considered the pertinent provisions of 11 O.S.1977 § 15–103 [36] and of the Oklahoma Constitution.

¶ 28 *Norman* is distinguishable from all of the earlier cases discussed here. There a referendum petition was filed 31 January 1980 and the two competing elections to be considered were 1) a statewide general election held in November 1978 and 2) a primary election held in March 1977.[37] In deciding the correct election for determining the needed number of signatures on the petition, the court first examined *Drumright*.[38] The statewide election held in November 1978 would not qualify as a municipal election under *Drumright* because people across the entire state voted in that election.

¶ 29 A secondary component in *Norman* was that the other election was considered to be a "primary." While the traditional understanding of "primary election" is a vote that is not open to the entire population but rather only to registered voters of a particular party, the court concluded that this was not the case in the City of Norman. It determined that under Norman charter's regime there are no primaries as the term is generally understood by traditional election terminology.[39] In reality the election known there as a primary election is a municipal election where all voters are entitled to vote.[40] Moreover the voters may potentially elect city officials without the intervention of what is traditionally called a "general election." [41]

---

30. *Belisle v. Crist*, 1967 OK 58, 425 P.2d 983.

31. *Id.* at 984.

32. *Id.* at 986.

33. *See id.* at 984–986.

34. *See supra* note 9.

35. *In re Referendum Petition Filed with the City Clerk of Norman on January 31, 1980, supra* note 9, 610 P.2d at 246.

36. *See supra* Part II(B) and note 12.

37. *In re Referendum Petition Filed with the City Clerk of Norman, supra* note 9, 610 P.2d at 246.

38. *See supra* note 16. In Drumright, the court held that a statewide election did not qualify as the next preceding election within the Oklahoma Constitution because it was not a municipal election.

39. *In re Referendum Petition Filed with the City Clerk of Norman, supra* note 9, 610 P.2d at 247.

40. *Id.*

41. *Id.*

¶ 30 The trial court erred in its analysis of *Norman* by interpreting its holding to suggest the term "next preceding election" meant the most recent municipal election at which all of the citizens and only the citizens of the city had the opportunity to vote.[42] This interpretation is overly broad. The court in *Norman* did not use the phrase "next preceding election" to mean a regularly scheduled municipal election at which all voters (and only voters of the city) had the opportunity to vote. Rather the court held that "preceding general election **may include** regularly scheduled municipal election at which all city dwellers have the opportunity to elect officers of the city."[43] The court concluded that a regularly scheduled municipal election was in fact the correct one to determine the needed number of signatures on a referendum petition, despite the fact that the name given that vote by the municipal law terms it as a "primary."[44] The trial court overextended the holding in *Norman* by incorrectly concluding that the phrase "preceding general election" may be a vote on a municipal sales tax increase. While the *Norman* court specifically allowed a "primary" to determine the minimum number of signatures a referendum petition must bear, this was permitted because it was in truth a regularly scheduled municipal election at which all electors of the city had the opportunity to choose city officers. *Norman* does not support the trial judge's conclusion. **The phrase "next preceding election" does not and may not include a vote on sales tax increase.**

¶ 31 Protestants rely on *Norman* for its holding which states "'preceding general election' **may include** regularly scheduled municipal elections at which all citizens have the opportunity to elect the officers of the city, whether such election is denominated a 'primary' or 'general' election so long as the 'primary' does not constitute merely a partisan nominating procedure."[45] While the Protestants interpret this holding to mean that a "preceding general election" is any election where all citizens and only citizens have the opportunity to vote in an election, this was not the court's holding. Rather **the court was qualifying in *Norman* a 'primary' election as capable of serving as a preceding general election when it meets certain basic criteria. In the case at hand, the court does not hold today that *Norman* was wrongly decided, but rather that *Norman* cannot support the trial judge's conclusion.**

¶ 32 In the case at hand, both the March 2005 and the November 2005 elections were municipal elections. This is so because city dwellers were authorized to vote in both and only they could vote. While the November 2005 election was a municipal election, **it was not a general election.** It lacked that quality because **it was not a regularly scheduled election to choose officers of the city.** It was an election called by the Mayor to decide a proposed sales tax increase. *Norman* cannot serve as a precedent here. Instead, *In re Initiative Petition No. 13 of Oklahoma City, Shelton v. Lambert* and *Belisle v. Crist* must be followed as providing the analysis for a correct answer to the issue at hand.

## III.

## SUMMARY

¶ 33 In accordance with the Oklahoma Constitution, the provisions of 62 O.S. § 868(B)(2) and 11 O.S. § 15–103 as well as this court's jurisprudence, the phrases "next preceding election" and "preceding general

---

42. From this misunderstanding of *Norman,* the trial court in its summary judgment on 8 August 2006 stated "[t]he *Norman's* Court conclusion that the term next preceding election may include a 'primary election' indicates that the terms preceding general election may also include a sales tax election or an election on other city issues as well."

43. *In re Referendum Petition Filed with the City Clerk of Norman, supra* note 9, 610 P.2d at 247 (emphasis added).

44. As explained previously a "primary" election in the City of Norman is an election at which all voters are entitled to vote in municipal elections to elect city-wide officials.

45. *In re Referendum Petition Filed with the City Clerk of Norman, supra* note 9, 610 P.2d at 247 (emphasis added).

municipal election" refer to the next preceding general municipal election held before the filing of the referendum petition. For the case at hand the court holds that the March 2005 election, the next preceding general municipal election, is that which must serve here as the foundation for determining the needed number of signatures for the Petition at hand. The November 2005 election fails to qualify as a general election. It was clearly a special election called under the provisions of the city charter—an election that dealt with a vote on a special issue unrelated to the election of municipal officials. Today's conclusion is entirely consistent with and obediently follows our pronouncements in *In re Initiative Petition No. 13 of Oklahoma City, Shelton v. Lambert, Belisle v. Crist*, and in *In re Referendum Petition Filed with the City Clerk of Norman on January 31, 1980*.

¶ 34 On certiorari previously granted upon the Proponent's petition, COCA's pronouncement is vacated. The trial judge's decision is reversed and the March 2005 election is declared to be that which must determine the needed number of signatures for the sufficiency of Referendum Petition No.2005–1RP. Cause is remanded for further proceedings to be consistent with today's pronouncement.

¶ 35 EDMONDSON, V.C.J., HARGRAVE, OPALA, KAUGER, WATT, TAYLOR and COLBERT, JJ., CONCUR.

¶ 36 WINCHESTER, C.J., DISQUALIFIED.

